## J. M. WAGGENER ET AL. v. H. N. HASKELL ET AL.

### Delivered May 6, 1896.

**1. Homestead—Rural Becomes Urban, When.**

When a rural homestead is brought within the corporate limits of a city over the protest of the owner, but he subsequently acquiesces by the dedication of city streets through his property, his rights become subject to the limitations applicable to urban homesteads.

**2. Urban Homestead—Value—Evidence.**

Where a rural homestead has been brought within the corporate limits of a city, evidence of the value of the block of ground upon which the residence is situated after the date of the acquiescence of the owner in the change is admissible, since his homestead rights are to be determined by the rules governing urban homesteads.

**3. Same—Lot Rented Out.**

When a lot claimed as a part of the urban homestead was, at the time of the recording of an abstract of judgment, being cultivated by another than the owner, upon an agreement for a division of the profits, such lot is subject to the judgment lien.

**4. Same—Products for Home Consumption.**

The use of a city lot to raise products for home consumption, is a use of such property for the purposes of a home.

ERROR from Dallas. Tried below before Hon. R. E. BURKE.

*K. R. Craig*, for plaintiffs in error.

No brief for defendants in error reached the Reporter.

JAMES, CHIEF JUSTICE.—H. N. Haskell and wife had a rural homestead of about 20 acres, which in 1882 was brought within the corporate limits of East Dallas, which city of East Dallas became a part of the city of Dallas in 1889, by act of the legislature. Afterwards streets were opened through this property, cutting it up into blocks. Although Haskell testifies that he opposed being brought into the city of East Dallas, and did not consent to all of the streets opened, yet the undisputed facts are as follows:

In September, 1888, he and his wife dedicated Main Street, through their property, to the city. This street detached the lots in controversy, except No. 5, from the residence place. Lot No. 5 was not detached until Peak street was opened. This street, according to the testimony, was opened by the street car company, without Haskell's consent; but on July 1, 1890, that part of Peak street which now separates the home block from lot No. 5 was recognized and dedicated in a conveyance of that part of the residence block marked on the plat "Hayter"

and "Power House." At this time Haskell and wife had dedicated Main Street, and had conveyed lots upon Carroll, Attison, Elm and Haskell Streets, recognizing and calling for these several streets in the deeds. The evidence shows clearly that, between 1887 and July 1, 1890, Haskell and wife had submitted to and adopted the subdivision of the property in blocks, and had recognized and dedicated the streets. All this had taken place before the rights of Waggener accrued, who became a judgment creditor of Haskell, and who levied on and brought in lots 1, 3, 4, 5, and 6, according to plat annexed. The issue was whether or not these lots constituted a part of the homestead of Haskell when the abstract of Waggener's judgment was entered.

Haskell's residence was upon a separate block, as shown on the plat. Here he had on that part of the block west of the branch his dwelling, barn, horse lot, cow lot, hog pens, garden, and orchard. On that part east of the branch, up to the portion marked "Power House" and "Hayter" he planted sorghum. The premises were fenced.

It appears that the lots in controversy (except 5) had been sold respectively on credit, and reconveyed to Haskell, as follows: Lot 6 was sold in January, 1887, on three years' time, and was reconveyed in March, 1890. Lot 1 was sold in December, 1889, on three years' time, and was reconveyed in August, 1890. Lot 4 was sold in December, 1889, on same credit, and reconveyed in November, 1890. Lot 3 was sold in August, 1889, on same credit, and reconveyed in December, 1891.

The judgment of Waggener against Haskell was rendered on May 30, 1892, and it was admitted that an abstract thereof was recorded in the office of the county clerk of Dallas County on August 8, 1892.

The use to which the lots were put by Haskell was, according to his testimony, as follows: On lot 3, in 1893, he raised sweet corn; the year before 1892, it was planted in millet; the year before that, he had a lot of wagons and scrapers stored on it. According to this, it was not used in the year 1892, when the abstract of judgment was entered. On lot 4 he raised in 1892 a crop of Irish potatoes, and before and since that time it was planted in corn and small grain, and said crops were for home consumption. On lot 6 a garden was grown in 1891 and 1892, but he (Haskell) did not cultivate it. A man who lived on the adjacent lot cultivated it in vegetables, and sold the crop and divided the money with Haskell. Lot 5, of two acres, was cultivated all the time in farm crops and small grain, principally in wheat, during 1891, 1892, and 1893. These crops, he testified, were cultivated by him for home consumption. Lot No. 1, he testified, was a pasture for the stock; that there was a way down the bed of the branch by which they could get from the home place to this lot.

It has been held that the extension of the corporate limits of a city to include a rural homestead does not of itself affect the pre-existing homestead rights of the owner. Clark v. Nolan, 38 Texas, 421. The correctness of this principle is not involved here, for, under the undis-

puted facts, Haskell and wife had, long before appellant's judgment, adopted, acquiesced in, and dedicated the several streets which subdivided their land. When this occurred their homestead in the property became subject to the rules that apply to urban homesteads, and their residence homestead would consist of the place upon which their home improvements were situated, and such other lot or lots, within the monetary limits prescribed, as were used for the purposes of a home on the date at which the lien of the creditor attached.

It was immaterial to the rights of the parties, in this view of the case, to consider the sales that had been made of certain of these lots, and their reconveyance to Haskell. The title to such lots had already become reinvested in Haskell, and the material inquiry was the use to which the lots or any of them were subjected at the time the abstract of judgment was entered. Their use at that time for the purposes of a home would determine their exemption, if the question of value admitted of their being a part of the home.

Plaintiff in error offered testimony to show that the block of ground where the residence was located, independent of the improvements, was, during the year 1887, and at all times after that, including the year 1891, of a value exceeding $5000, which evidence was excluded; and this is assigned as error. The evidence in this record would admit of the finding that Haskell and wife's consent to the appropriation of the ground for the several streets occurred during that period, and, in our opinion, the testimony was admissible, for from the moment they acquiesced in the streets for public purposes, they abandoned their claim to the land as a country homestead, and their homestead rights were to be judged by the rule applying to homesteads in a town or city. Their homestead would then have consisted of the residence block, and if that were then of the value of $5000, they could have no homestead claim in the other lots. The testimony should have been admitted, and for its exclusion the judgment will be reversed.

If the value of the residence block was, at the time Haskell's homestead claim became urban in its character, of less value than $5000, and other lots were used in connection with it for the purposes of a home, within the prescribed limit of value, such lots, if continued to be owned and so used by defendants in error, would be exempt; and it seems to us that, if all the lots so owned and used at that time and continued to be so used should not come within the limit of value, Haskell should in that case be allowed to select those of the lots within the value he desired to retain as a part of the homestead.

The testimony of Haskell shows that, in the year plaintiff in error's abstract was recorded (1892), the lot No. 6 was cultivated by another person, upon an agreement that Haskell would receive half the proceeds of the sale of the crop. This clearly shows that the lot was rented out for the purpose of deriving a revenue from it, and it was subject to the judgment lien. Blum v. Rogers, 78 Texas, 530. Lot

3 is shown not to have been used in 1892, hence it was subject to the judgment.

Since writing the above, we have sought the opinion of the Supreme Court on the question of whether or not the raising of annual crops on lots 5 and 4 for home consumption was, within the meaning of the existing constitution, a use for the purposes of a home. The Supreme Court seems to have misunderstood our question, and assumed that the question involved the inquiry whether or not one who is a farmer can have a business homestead by farming on a lot or lots in a city. The difficulty we had was whether one could claim as part of his homestead such lots, when not cultivated in the pursuit of his business or calling, but merely to supply him with products for home consumption. As the case was to be remanded, we conceived that the question might be important in another trial. The opinion of this court on the question is that the use of detached land in a city to raise products for home consumption is a use of such property for the purposes of a home, within the meaning of the constitution. It may be that the certified answer means that, where the head of a family occupies himself with cultivating such lots, whether the products are sold or used at home, the lots are exempt as a business homestead. In either case, lots 4 and 5 would be exempt, upon the evidence in this record.

As to the lot 1, which is a small lot, apparently not over 100 feet square, the only use claimed to have been made of it is as a pasture for stock. If it be shown to connect with the home place so that stock get to and from it in such manner as to make it a part and parcel of the premises, it would be a part of the homestead; but, if not, to say that such a lot could really be used, or be useful, to any extent, for the pasturage of animals, does not recommend itself as a reasonable proposition.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*