JOHANNA KALTEYER, EXECUTRIX, ET AL., V. JOHN L. WIPFF ET AL.

No. 800. Decided June 15, 1899.

1. Probate Sale—Certiorari—Agreed Judgment.

An heir, on coming of age, brought proceedings in the District Court to review, by certiorari, proceedings of the County Court in the settlement of the ancestor's estate, including a sale of land belonging thereto, and after obtaining the writ a judgment was entered by agreement setting such sale aside, leaving only the settlement of equities arising out of the receipt of rents of the property, etc., to be determined upon trial. Upon appeal from the final judgment adjusting such equities,

the right to have the sale set aside was not in issue; the court could not go behind the agreed judgment to determine the sufficiency of the grounds for setting aside the sale. (P. 679.)

**2. Same.**

After such agreed judgment a peremptory instruction on final trial to find for the parties their interest in the land as established by such judgment was proper, and there being no controversy as to the boundaries of the land, nor necessity for showing title of the estate thereto, discrepancies in the description of the property in the title deeds to the ancestor were immaterial. (P. 679-681.)

**3. Same—Amendment.**

The agreed judgment having settled the rights of the administrator with respect to certain commissions claimed by him, the allegations attacking his right to such credits, though carried forward into plaintiff's amended petition, were immaterial.. (P. 680.)

**4. Same—Harmless Error.**

Admission of evidence to the allegations supporting the right to set aside such sale carried forward into plaintiff's amended petition after the entry of the agreed judgment setting such sale aside, if improper, was harmless error. (P. 679.)

**5. Same—Collateral Attack.**

The proceedings for obtaining certiorari still constituted a part of the record, though plaintiff after obtaining the writ had amended without continuing his prayer for certiorari; such amendment did not change the action and the proceedings continued to be a direct and not a collateral attack upon the sale. (P. 679.)

**6. Same—Limitation.**

The original proceeding having been brought in due time such amendment was not subject to the defense of limitation. (P. 680.)

**7. Evidence—Age—Declarations of Mother.**

A brother of plaintiff, showing himself competent to testify as to his age, could base his testimony in part on declarations of their mother, still living, with reference to the date of plaintiff's birth. (Pp. 675, 676, 680.)

**8. Auditor's Report—Exceptions.**

Where an auditor's report, admitted in evidence without objection, shows that by agreement plaintiff was to be charged with a certain sum as an advancement to him as heir, a peremptory instruction to find in accordance therewith was proper. (P. 680.)

**9. Estates—Adjustment of Claims—Purchaser—Lien.**

Upon settlement and distribution of an estate it was proper to charge the interest of purchasers of real property from one of the heirs, such purchasers being parties to the proceeding, with a lien for the amounts due from their vendor for rents received from such property, in favor of the heir entitled to share in same. (P. 681.)

**10. Estates—Partition—Parties—Judgment.**

An agreed judgment setting aside a probate sale was binding upon the parties and subsequent purchasers from them, and such purchasers could not object to a decree partitioning the estate, for want of the presence of parties who claimed under the sale so set aside and had no other interest. (Pp. 681, 682.)

**11. Partition—Equity—Sale—Property Incapable of Division.**

Courts of equity have jurisdiction over matters of accounting and partition independent of the statute, and where in the exercise thereof they find sale necessary for the purposes of partition, they may so order without first requiring commissioners of partition and a report of necessity for sale. (Pp. 682-685.)

**12. Purchaser Pendente Lite—Costs.**

One who purchases pendente lite, and thereupon becomes a party, does not become liable for costs incurred prior thereto. (P. 685.)

ERROR to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Wipff, on attaining his majority, brought certiorari in the District Court to review the proceedings had in the probate court in the settlement of the estate of his deceased father. From a judgment recovered by him appeal was prosecuted by defendants Kalteyers, and on affirmance after reformation they obtained writ of error.

*George C. Altgelt* and *R. H. Ward*, for plaintiffs in error.—The fourth amended original petition of plaintiff and interveners states no cause of action, because it appears therefrom that they have no title upon which to maintain this suit of partition, for the reason that the title which descended to John Louis Wipff upon the death of his father was divested from him by an administrator's sale, ordered and confirmed by a court of competent jurisdiction, and therefore not subject to collateral attack. Rev. Stats., art. 2137; Crawford v. McDonald, 88 Texas, 626; Rutherford v. Stamper, 60 Texas, 450; Murchison v. White, 54 Texas, 84, 85; 1 Black on Judg., sec. 252; 2 Id., sec., 634; Moore v. Blagge, 91 Texas, 151.

The allegation in plaintiff's petition that "in the final account of Charles Schmidt, administrator of John B. Wipff, deceased, he was allowed a credit of $850 as commission, when as a matter of right and of law he was not entitled to any commission, or if any, such commission should not have been allowed on a greater sum than $2500," is subject to exception, because it is argumentative and uncertain, and constitutes a collateral attack upon the judgment and decision of the County Court, and such overcharge, if any there was, can not be litigated in this suit, and because these defendants are not in any manner shown to be liable for the debts or default of Charles Schmidt.

This court has no means of knowing when this suit was originally brought, hence the only data from which the question of limitation may be determined is the file mark upon the petition upon which the case was tried. It appears from this that upwards of twenty years have elapsed since the wrongs were done. It also appears that John L. Wipff became of age October 11, 1891, and that more than six years have elapsed since he reached his majority.

The District Court erred in admitting in evidence the testimony of the witness August Bonnett, to the effect that plaintiff, John L. Wipff, was 27 years old in October, 1897, and that he knows this fact because his mother told him so; and further erred in not striking out said testimony when said witness, on cross-examination, testified that his mother was alive and living in San Antonio, Texas; all of which more fully appears from defendants' bill of exception number 1. Fowler v. Simpson, 79 Texas, 611; Byers v. Wallace, 87 Texas, 503; 1 Greenl. on Ev., sec. 103.

[Statement from appellants' brief:] August Bonnett, a witness for appellees, in response to questions was permitted to testify as follows: "I know John L. Wipff; he is the son of John B. Wipff. John L. Wipff is my half-brother. I have known him ever since he was a child. I am

nine years older than he is. I have known him since his infancy, and have associated with him. His mother is Mrs. Sophia Wipff, and she is also my mother. We were raised at San Antonio by Mrs. Wipff. I lived in the same family with plaintiff."

Plaintiff's counsel here asked the witness the following question: "From your knowledge of the time that he was born, and from what you have heard your mother or other members of the family say, can you state how old he is?" Defendants objected to this, because it was not shown that the mother of witness and plaintiff and other members of the family referred to in the question were dead, and because said question called for hearsay testimony. The objections were overruled, and the witness answered: "Yes, sir; he is 27 years old. He arrived at the age of 27 in October last" (1897).

On cross-examination the witness was asked how he knew that plaintiff was 27 years old in October last, and answered: "My mother told me so. My mother is living here in San Antonio."

Defendants thereupon moved the court to strike out the testimony of said witness with reference to age of plaintiff, John L. Wipff, because said testimony was hearsay and the declarant, to wit, the mother of plaintiff John L. Wipff, was living within the jurisdiction of the court, and therefore her declarations were hearsay and secondary evidence, and because it appeared that the best evidence of plaintiff's age was within his power.

The court refused to strike out the testimony, when plaintiff's counsel further examined the witness, and he testified: "I don't know how to express myself; to tell the truth about it, I know I was about 8 years old when the plaintiff was born, and he was with me ever since, and he was raised with me and my two sisters by my mother, in the same family, in the same house."

It was not competent in this suit to attack said administrator's deed and the proceedings in the County Court by evidence dehors the record, because said County Court had jurisdiction of the matters and things adjudicated by it in the proceedings had in the estate of John B. Wipff, deceased, and the District Court in this suit could not review or revise such proceedings.

Appellees, having failed to prove title to the property described in their pleadings, could not recover the same by showing title to another piece of property not shown to be identical with the property claimed in their pleadings.

In suits for partition, commissioners of partition should be appointed and sale of the property should not be decreed unless the commissioners report that the property is incapable of partition. Rev. Stats., chap. 77; Kremer v. Haynie, 67 Texas, 450; Tieman v. Baker, 63 Texas, 641; Keener v. Moss, 66 Texas, 181.

*J. A. Buckler, Otto Staefel, John H. Clark,* and *R. L. Ball,* for defendants in error.

WILLIAMS, ASSOCIATE JUSTICE.—John B. Wipff, under whom all the parties now before the court claim the property in controversy, died in 1874, leaving three children, Mrs. Mary Heder, Agatha Wipff, who afterwards married Charles Schmidt, and John L. Wipff, the original plaintiff, who was a minor. Soon after the death of John B. Wipff, Charles Schmidt, who had married Agatha, took out letters of administration on his estate. During the administration, an order was entered charging John L. Wipff, the minor, with an advancement of $2000. Later, the administrator applied for an order to sell the real estate in controversy, a house and lot in San Antonio, at private sale for cash. The sale was at once made to Heder, the husband of the daughter Mary. This sale was reported to the court and confirmed as having been made for the sum of $8101, cash, and the administrator executed and delivered to Heder a deed, reciting the receipt of that sum. He afterwards made his final count, in which he represented that, after paying all debts and expenses, he had on hand for division among the heirs a sum of money to which the three children were entitled, except that John L. Wipff should be charged with the advancement of $2000. This account was acted upon at the March term, 1877, the minor being charged with the advancement, and a division among the heirs was ordered accordingly. This left for the minor only $127, and the administrator was discharged upon this settlement. Schmidt died about 1887, leaving his widow and two children. The minor became of age in October, 1891, and on February 9, 1892, he instituted a proceeding in the District Court by certiorari to the probate court to have the orders charging him with the advancement, the orders of sale and confirmation, and the order finally settling the estate and discharging the administrator, reviewed and set aside. To this suit he made Heder and wife, Mrs. Schmidt, and the children of Charles Schmidt, parties. In his petition, he denied that any advancement had been made to him by the decedent and alleged that, if any had been made, it was not more than $1000. He attacked the sale upon the ground that it was not made for cash, in accordance with the order of sale, but wholly or partly on credit; that it was made by collusion between the administrator, Schmidt, and wife, and Heder and wife, through which the property was unfairly sold for less than its value, upon the understanding that Heder should purchase for the benefit of his own wife and of Schmidt and wife, in pursuance of which, on the same day on which the deed was executed by the administrator to Heder, the latter executed to Mrs. Schmidt an instrument by which he acknowledged that he had not paid all of the purchase price of the land and agreed that it should be charged in his hands with a lien for the portion of the purchase money unpaid, and also agreed that he would convey to Mrs. Schmidt an undivided half of the land, if she would pay one-half of the amount bid by him or such portion of it as might remain after deducting her distributive share in the estate and the amount of an approved claim which she held against the estate. He further charged that in pursuance of this agreement Heder had, in 1881, exe-

cuted to Mrs. Schmidt a deed for half of the property. He also filed an original suit in the District Court on the 10th day of March, 1892, in which, as may be inferred from the record now before us, he sought a partition of the land and an accounting between himself and his sisters as cotenants. These two suits were afterwards, by agreement of all parties, consolidated and ordered to be tried as one and the children of Schmidt were dismissed from the suits by plaintiff. The first trial of the case resulted in a judgment for the defendants, which, on appeal, was reversed by the Court of Civil Appeals and the cause was remanded for a new trial, in accordance with instructions laid down by that court in its opinion. Wipff v. Heder, 26 S. W. Rep., 118. On the 12th day of November, 1894, after the mandate was returned, an agreed judgment was entered by which the administrator's sale of the property, the deed and the order of confirmation were set aside and held for naught. By agreement, an auditor was appointed and the case was referred to him, with directions to state the accounts between the parties in accordance with the opinion of the Court of Civil Appeals, the order instructing the auditor as to what he should take into account and ascertain by his report. The auditor made his report on the 2d day of January, 1895, by which, after allowing the defendants for all credits claimed, he found to be due to the plaintiff, as one-third of the rents of the property which had been actually received by the defendants up to January 1, 1895, the sum of $6317.25. On the 12th day of January, 1895, Heder and wife conveyed to Geo. H. Kalteyer their one-third interest in the property and thereafter Kalteyer became a party to this suit,—just how, the record fails to show. Subsequently his death was suggested, and Johanna Kalteyer, as his executrix and individually, and the devisees under his will, Minnie Cook and her husband, Fred Kalteyer, and Stella Kalteyer, were made parties in his stead. Another trial was had, resulting in judgment for the defendants, which was reversed by the Court of Civil Appeals (Wipff v. Heder, 41 Southwestern Reporter, 164); and thereafter there was a third trial, at which judgment was rendered for the plaintiffs, which, on appeal, taken by the Kalteyers alone, was reformed and affirmed by the Court of Civil Appeals, and from that affirmance this writ of error is prosecuted.

The plaintiff had, pending the suit, conveyed parts of his interest to J. A. Buckler and Otto Staffel, who had intervened, and the judgment was a joint one in favor of plaintiffs and interveners.

At the last trial, the court instructed the jury to find for plaintiffs and interveners for an undivided one-third of the property, against all the defendants, and against Heder and Mrs. Schmidt for $6317.29, as plaintiff's share of rents received by them up to January 1, 1895; and against Mrs. Schmidt and Johanna Kalteyer, as executrix, the sum of $760, as plaintiff's interest in rents received by those defendants after January 12, 1895; and for a lien on defendants' interest in the property for such sums. The verdict was in accordance with the charge, and the judgment was for a sale of the property and a distribution of

the proceeds among the parties, in accordance with these findings. The Court of Civil Appeals reformed the judgment so as to order a sale of only the two-thirds interest to enforce the lien declared for the money recovered. The judgment also provides, that by payment of the money adjudged the sale might be prevented.

When the application for writ of error was passed upon we were inclined to the opinion that the facts appearing upon the last trial were not sufficient to authorize a reversal of the orders of the probate court by which the title to the property was passed to Heder, and that therefore the District Court erred in peremptorily instructing a verdict for the plaintiff and interveners. A thorough examination of the record has convinced us that, since those orders and the sale under them were set aside by the agreed judgment entered in 1894, the question on which we granted the writ is no longer in the case. By that judgment, the sale was set aside unconditionally and the object of further proceedings was expressly stipulated to be the settlement of the equities existing by an ascertainment of the rents received by the defendants and the credits to which they were entitled by reason of disbursements made by the administrator and by the defendants themselves for the benefit of the estate. This view disposes of several of the principal contentions of plaintiffs in error. Their chief contention is that the amended petition on which the trial was had was subject to exceptions urged on the ground that it sought to collaterally attack the orders of the probate court. As the case was first presented upon the transcript filed in the Court of Civil Appeals, this contention might have appeared to be justified, inasmuch as the original proceeding by certiorari did not appear; but the record was perfected in the Court of Civil Appeals by certiorari granted upon the application of the appellees therein, and the original proceedings by certiorari to the County Court were brought up. After this had been done, the plaintiffs in error moved the Court of Civil Appeals to strike out those proceedings on the ground that they constituted no proper part of the record upon appeal. We think that court acted properly in not sustaining this motion and in considering the record as brought up by the certiorari. It was essential to show the history and nature of the proceeding under review and to meet the objections urged to the judgment of the District Court. Nor can the contention that the amended petition, filed in 1897, abandoned the original certiorari and changed the action so that it constituted a collateral attack on the probate proceedings be sustained. When the agreed judgment was entered, the purpose of the certiorari was accomplished, and all that remained for the court to do was to decree an accounting and a partition. The amended petition did, however, repeat the allegations upon which the certiorari was sued out, and the pleadings of defendants set up grounds for the setting aside of the judgment of 1894, but as no evidence was offered to sustain their allegations, the trial court was right in ignoring them and determining the rights of the parties in accordance with the agreed judgment.

The exception that the action was barred by limitation was properly overruled. The petition plainly showed that both actions were brought within a year after plaintiff reached majority.

The allegations of the amended petition, by which it was sought to show that the administrator of John B. Wipff's estate was not entitled to a credit of $850, charged for commissions, was an unnecessary and immaterial part of the petition. The agreed judgment had specified what the auditor should take into account, and among these matters was the credit to be allowed for commissions due to the administrator, and the auditor was instructed not to allow commissions upon the price with which the administrator had charged himself as the purchase money of the land. The report of the auditor was on file, showing what he had allowed as commissions, and this was in accordance with the instructions. The allegation in question was simply brought forward from the original petition for certiorari, and whether or not it was sufficiently specific had become an immaterial question; and the refusal of the court to sustain the exception to it is likewise immaterial.

The ruling of the District Court in the admission of the testimony of August Bonnett to the declaration of plaintiff's mother as to his age was also harmless. The witness showed himself to be competent to testify to plaintiff's age, and did so.

The admission in evidence of the instrument in writing referred to in the pleadings, by which Daniel Heder acknowledged the lien for the purchase money of the land, was likewise immaterial in the present attitude of the case. That evidence was offered for the purpose of sustaining the allegations by which plaintiff sought to set aside the administrator's sale, and as that sale had already been set aside by agreement, the evidence could have worked no harm.

The tenth and eleventh assignments of error complain of the peremptory instruction of the court in favor of the plaintiff and interveners for a third interest in the land. This instruction was necessitated by the judgment by which the administrator's sale had been set aside and the title to the property left in the heirs of John B. Wipff. The point urged under this assignment is that the deeds to John B. Wipff, offered by the plaintiff and interveners to show title in his estate, did not describe the property as it is described in the petition. We think that the evidence, taken altogether, shows sufficiently for the purposes of this case that the property described in the deeds and other evidences of title offered is substantially the same as that described in the petition; but, if otherwise, the nature of this suit is not such as to require an accurate establishment of the true boundaries of the property, and the most that can be said is that there is some slight difference between the allegations of the petition and the deeds offered in evidence as to the lines of the lot. The evidence shows and the petition alleges that the house and lot in question are known as "the Green Front Saloon property." The controversy is between parties claiming through the estate of Wipff, and the pleadings make no issue as to the title of that estate

to the property described in the petition. We can not see that it was incumbent upon the plaintiffs to offer any evidence at all to show title in the estate. The issue is made by the pleadings as to the property described in the petition, and no other.

The twelfth assignment of error complains of the peremptory instruction in favor of the plaintiff and interveners for the sums of money mentioned in the charge. The particular point which seems to be made by the petition for writ of error is that the charge excludes a credit to the defendants of $2000, with which the plaintiff admitted in his pleadings he had been charged as an advancement, by order of the probate court. The answer to this contention is that the plaintiff in his pleadings also contended that he never received more than $1000, and the report of the auditor shows that, by agreement, the plaintiff was charged with that sum in favor of the defendants. This report was admitted in evidence without question, and stood before the court unobjected to; and this complaint of the charge must therefore be held not well taken.

We can not agree with the contention of plaintiffs in error that the evidence did not warrant any judgment against the widow and heirs of Kalteyer, which contention is based upon the assumption that the evidence does not connect them with the property. The record shows the deed from Heder and wife to Kalteyer, and it further shows that his widow and children were made parties, as such, and that they pleaded, asserting claim to the property. In this state of the case, the plaintiff and interveners, upon establishing their right to one-third of the property, were entitled to judgment against all the defendants for it, and also for such a charge upon the interest of the others for rents received as the evidence showed.

The verdict of the jury was sufficient in form to establish the lien against all of the parties.

Under their sixteenth assignment, plaintiffs in error contend that the children of Charles Schmidt were necessary parties to this proceeding, and that no final judgment could be rendered without having them before the court. In order to dispose properly of this point, the condition of the record must be kept in mind. The objection was never urged except by the Kalteyer parties, who are the only ones who appealed from the judgment of the District Court, and it was urged by them when they were brought into the suit as pendente lite purchasers long after the agreed judgment of 1894 had been rendered. If the children of Schmidt had any interest in the land, it was through the deed made by Heder to Agatha Schmidt, the wife of Charles Schmidt, before his death, investing Schmidt and wife with a community interest. Whether or not that deed vested an interest in the community estate depends, of course, upon the further question, whether the consideration for the deed was the separate property of Agatha Schmidt, as the record indicates, though not conclusively, it may have been; or whether the consideration was paid wholly or partly out of community funds. It is impossible, in this state of the record, to see whether or not, had the deed stood, the com-

munity of Schmidt and wife would have had an interest in the land; but, by the agreement between the only parties then before the court, including Kalteyer's grantors, the Heders, the judgment of 1894 set aside the administrator's sale and the deed made under it. · That judgment, as between the parties to the agreement, determined that the estate of Charles Schmidt and the community estate of himself and his wife had no interest in the property, and left the title in the heirs of John B. Wipff. If the children of Charles Schmidt were ever necessary parties to the case, it was in order that they might be heard upon the question as to whether or not the deeds from the administrator to Heder and from him to Agatha Schmidt should be set aside or should be held good, against the estate of John B. Wipff. The parties to this suit were content to have the judgment entered setting aside those deeds, thereby necessarily leaving the title to the property in the heirs of John B. Wipff; and neither they, nor the plaintiffs in error purchasing from them after that judgment was entered, can be heard to say that it should not have been entered without other parties before the court. As between themselves, the judgment establishes, by force of their own agreement, that the property belonged to their ancestor and not to Charles Schmidt or his children.

The Court of Civil Appeals held that, as there was in the amended petition on which the trial proceeded no prayer for a partition, the suit was not to be regarded as one for partition, and from this, concluded that the proper judgment was one for a foreclosure of a lien to secure · payment of the rents recovered by plaintiff and interveners upon defendant's interest in the property, instead of a decree for the sale of the entire property for purposes of final partition. The fifteenth assignment of error brings in review this ruling, the contention being that the action is one for partition, and that an order for the sale of the property, without the appointment of commissioners and a report from them that the lot was incapable of division, was improper. The earlier decisions of this court warrant the proposition that the statute regulating partition does not prescribe an exclusive method of distributing real estate among joint owners. On the contrary, it has been recognized as the law that the statutory provisions may be found inadequate to meet the exigencies of many controversies which may arise, involving complicated questions, such as disputed titles and those arising out of an accounting preliminary to distribution; and that the jurisdiction belonging to courts of equity to grapple with and determine all such difficulties remains in our district court in all its fullness, undiminished by the statute. Grassmeyer v. Beeson, 18 Texas, 766, 767; Payne v. Benham, 16 Texas, 368.

The fact that in a particular case the procedure prescribed by the statute has not been followed is not therefore conclusive of the questions whether or not the suit is one for partition and whether or not the judgment rendered is the proper one. By the statute regulating practice in the district court, it is provided: "Art. 1335. The judgment of the

court shall conform to the pleadings, the nature of the case proved, and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity." Batts' Rev. Stats.

If the pleadings and proof establish a right in the party to any relief which a court of law or equity may grant him, the district court must, under this provision, extend it. If such relief can not be obtained under the partition statute, it may not be assumed that it can not be obtained at all. The nature of the present case required (1) the establishment of the disputed title of plaintiff and interveners to a share in the house and lot; (2) an accounting between the parties and the ascertainment of any balance of money due from one to the other on account of an undue share of benefits received from the common estate; (3) the adjustment and satisfaction of the rights thus established. To secure all of this, the pleadings and proof were sufficient.

The petition alleged and the evidence conclusively proved that the property out of which plaintiffs and interveners were to get not only a share, but satisfaction for rents due them, was physically unsusceptible of division. The petition did not pray for a division of the land itself, but for a sale of it and a division of its proceeds. The case evidently involved the elements of an equitable proceeding for accounting and partition. It is only by thus treating it that the court can, in our opinion, be authorized to charge upon the interest of the defendants the money found to be due plaintiffs and interveners for rents.

We do not understand that a tenant in common has, upon the share of his cotenant, a lien for rents received by the latter beyond his share in any such sense that a simple action may be maintained for debt and foreclosure, as may be done in the case of an ordinary lien. None of the authorities cited by counsel sustain such a proposition, and we know of none that do. The lien or charge of which the authorities speak is that which courts of equity enforce in decreeing final partition and adjusting accounts and equities as a preliminary thereto. Scott v. Guernsey, 60 Barb., 163, same case, 48 N. Y., 124; Wright v. Wright, 59 How. Pr., 186; Freem. on Coten., sec. 512.

In ascertaining and satisfying the equities of the parties, the court will secure to either, out of the common estate, satisfaction for money found due him by his cotenant on an accounting. Moore v. Moore, 89 Texas, 33. But this is only done as an incident of the proceeding to justly and equally distribute the property in accordance with the respective rights to which the parties are found entitled. It follows that an order for the sale of this property can only be justified as a necessary incident to a full and final partition. This the judgment of the Court of Civil Appeals does not provide for.

The question raised by plaintiffs in error therefore recurs, whether or not, upon allegations and proof that the property can not be divided so as to make a complete and fair division satisfying the claims of all parties, the court may order a sale and distribution of the proceeds with-

out having first appointed commissioners and received their report showing that no division can be made of the land. The property is a lot with a stone business house upon it, which covers all of it except a few feet necessary for a passway. It is plainly incapable of being divided so as to give to all parties their interests in kind, and at the same time satisfy the claim of plaintiff and interveners for rents.

The decision in the case of Keener v. Moss, 66 Texas, 181, is relied on as sustaining the affirmative of the question above stated; and it must be admitted that it goes far in that direction. But the reasoning in that opinion is based wholly upon the proposition that the proceeding was statutory. The decisions before referred to establish the proposition that the statutory proceeding is not the exclusive one, and this has been embodied in the statute itself. Batts' Stats., art. 3632. This distinction was not adverted to in Keener v. Moss, but it was assumed that the statute necessarily controlled. Since equitable suits for partition may be maintained outside and independent of the statute, and by article 1335 the judgment must give to the parties all the relief to which they may be entitled either in law or equity, if a sale of the property is found essential to a complete enforcement of the rights established, we think there can be no doubt that it is competent for the court to adjudge it.

In the case of Moore v. Blagge, 91 Texas, 151, Justice Denman made a very careful review of the authorities showing the practice of courts of equity in ordering sales of land for purposes of partition, and pointed out that it had been the practice in this State to order such sales from the earliest history of its courts. The statute of partition for a long time contained no provision for such sales, but they were made without express legislative sanction, in the exercise of equity jurisdiction. That no purpose existed by the present statute to restrict the powers exercised by the courts in this respect is made obvious by article 3632, in these words: "Nor shall such provisions preclude partition in any other manner authorized by the rules of equity, which rules shall govern in proceedings under this title in all things not provided for in this title."

It was not intended, in our opinion, by article 3621, to lay down an inflexible rule applicable to all cases, requiring the court to first appoint commissioners and direct them to divide the land, though the allegations and proof had established, so conclusively that there could not be two opinions about it, that the property could not be divided without destroying its value to all interested. That article rather contemplates a case in which an order for actual partition has been made, as required by article 3611, and the commissioners, in undertaking to make it, find "that a fair and equitable division  *  *  *  can not be made," in which event they are required to make such opinion known to the court. Even then the court must make the ultimate decision as to the propriety of a sale. This is entirely consistent with the proposition that the court, in equitable suits for partition, may, when the necessities of the case can not be otherwise met, order a sale in the first instance, without going

through the idle form of trying to have made, through commissioners, a division which plainly can not be made. The powers of the court are ample to take such order as is necessary to settle and adjust all rights involved, and, if this requires a sale, to provide for it.

We are therefore of the opinion that the judgment of the District Court was right in ordering a sale of the whole of the property and a distribution of the proceeds, and that the judgment of the Court of Civil Appeals, ordering a sale of only defendants' interest to satisfy a supposed lien, was erroneous.

We are further of the opinion that only the costs which accrued after Kalteyer became a party should have been adjudged against his estate. While he, as a pendente lite purchaser, stands in the place of the original party from whom he purchased, he did not assume the personal liability of that party for costs further than they may be paid out of the proceeds of the property, when sold.

The judgment of the Court of Civil Appeals will therefore be reversed and judgment will be here rendered that plaintiff and interveners recover an interest of one-third in the property in controversy; that they also recover the moneys as specified in the judgment below; that the property be sold by the sheriff for cash, subject to approval of the District Court, to which he shall report his action for that purpose; that the proceeds be returned into that court for distribution in accordance with the judgment. All costs of the suit, except those of appeal and writ of error, and those of making the sale and distribution, will be deducted from the portion of the proceeds of the sale which would otherwise go to defendants; and if any part remain unpaid thereby, the plaintiff and interveners will have judgment for same against all of defendants, except the executrix, widow, and children of Kalteyer, and against Kalteyer's executrix for such portion of them as accrued after he was made a party to the suit; and against Johanna Kalteyer individually, Minnie Cook, and Fred Kalteyer, such as accrued after they were made parties. The costs of appeal and writ of error are adjudged against plaintiff and interveners, and the further cost of sale and distribution will be paid by the parties in proportion to their respective interests in the property.

*Reformed and affirmed.*