**AMAN et al. v. COX et al.**

No. 2280.

Court of Civil Appeals of Texas. Eastland.

July 10, 1942.

Rehearing Denied Sept. 25, 1942.

Davis Scarborough, of Abilene, for appellants.

Stinson, Hair, Brooks & Duke, of Abilene, for appellees.

GRISSOM, Justice.

Sam R. Cox, Jr., filed suit in trespass to try title to a tract of land of 156 acres against John Aman et al. Defendants answered, among other things, by a plea of not guilty, and filed a cross-action. C. B. Manly and wife, Urma Manly, in addition to the plaintiff Cox, were made defendants in cross-action. For convenience, Cox and the Manlys will be referred to as plaintiffs, and John Aman et al. as defendants.

Defendants are the heirs of Fannie Aman May, deceased, who was the second wife of John May, deceased. Defendants, in their cross-action, alleged the land was purchased by John May and his first wife, Mollie May, in 1907; that the purchase price was $3520, $2440 of which was paid in cash, and the unpaid balance was represented by 8 notes for $135 each, one note being payable annually thereafter for 8 years; that the land was used as the homestead of John and Mollie May until the death of Mollie in 1908; that Mollie May was survived by her husband, John May, and two sons and one daughter; "that the said two sons died in infancy, after the death of the said Mollie May and before either of said sons attained the age of six (6) years"; and that the daughter, Donnie Bell May, after the death of her mother and brothers "became vested with title to *one-third* (1/3) of the proportionate part of the land involved in this suit which was paid out at the time of the death of her said mother, such interest so inherited by the said daughter being a *61/264* part thereof." (Italics ours.) Defendants alleged that in 1913 John May married Fannie Aman, ancestor of the defendants, and said land was owned and used as their homestead until their deaths. That John May died October 3, 1929, and Fannie Aman May died November 23, 1929; that at the time of the deaths of John and Fannie Aman May, the purchase price for said land had been paid and consequently there was no reason for selling the homestead, and the title thereto vested in Donnie Bell May (the daughter of John and Mollie May), and defendants; that the Manlys acquired the interest of Donnie Bell May, and that Sam R.

Cox, Jr., had no right, title or interest therein.

Defendants' second community (that of John and Fannie Aman May) paid a part of the purchase price of said land, and made improvements thereon from the funds of the second community. Defendants alleged they thereby acquired "a *joint interest* and equity" in said land, or an equitable lien thereon which they alleged "to be at least *equal to a 2/5 part* thereof", and that defendants were entitled to "an equitable division of said land in accordance with said contribution of their ancestor or to a foreclosure of their equitable lien for such contribution." (Italics ours.)

Jessie Aman (now Bullock) was one of the defendants. With reference to her defendants alleged "she occupied and fulfilled the status of, and was in truth in fact and in law, an adopted child of the said John May and at the time of his death became and was his heir whereby she succeeded to an undivided one-fourth interest in all the property owned by the said John May at the time of his death, he having left surviving him only one natural child namely, the said Donnie Bell Manly and this plaintiff as adopted child; that her said fractional interest in the land here in controversy is subject only to its pro rata part of the above mentioned obligation for contribution."

Defendants alleged that after deducting the interest of Donnie Bell acquired from her deceased mother and brothers, defendants were entitled to a settlement for the contribution made by their ancestor (Fannie Aman May), and that the balance of the land was owned one-fourth by Jessie Aman Bullock and three-fourths by C. B. Manly and wife, grantees of Donnie Bell, and the land should be so partitioned.

Defendants in their cross-action further alleged that the plaintiff Cox based his claim to title to the land, or an interest therein, on a deed executed by C. B. Manly, as administrator of the estate of John May, deceased; that the only property attempted to be administered on was the land involved in this case; that at the time of the death of John and Fannie May it was their homestead and there was then no part of the purchase price unpaid; that the homestead was not subject to the payment of ordinary debts; that no necessity existed for its sale, and that the title there-

to, upon the death of John and Fannie Aman May, vested in Donnie Bell May and defendants; that no administration could lawfully be had thereon; that the administration and administrator's deed were void and constituted a cloud upon defendants' title. Defendants also sought an accounting from C. B. Manly.

In the original answer of Sam R. Cox, Jr., to defendants' cross-action, by exception and special plea, Cox asserted defendants' claim to the land was not by virtue of a contract in writing signed by either John or Fannie May, or any person authorized to sign for them; that there was no agreement by the said Mays to convey said land to any of the defendants, apparently asserting the statute of frauds as a defense. Thereafter all of the plaintiffs (Sam R. Cox, Jr., and C. B. Manly and wife) filed an answer to defendants' cross-action which seems to omit the aforesaid allegations. In this answer it was asserted the Manlys owned a one half undivided interest in the land. Cox alleged he purchased the land from C. B. Manly, administrator of the estate of John May, deceased; that defendants knew Manly was administrator; knew of all the claims against John May's estate, and that a greater portion of the claims were for doctor bills and for the last sickness of Fannie May, and for taxes and "upkeep of the premises"; that plaintiffs then asserted no interest in the estate of John May, deceased. That defendants knew the premises were to be sold by the administrator for the payment of debts allowed by the administrator and approved by the probate court; that plaintiffs made no effort to "present their claims or rights until after said land had been sold by the administrator and purchased by Sam R. Cox, Jr. at the administrator's sale." That defendants knew the money paid by Cox in the purchase of the land from the administrator was to be used to pay the debts against the estate of John May, deceased, and that by the "acts and conduct of the plaintiffs in cross-action failing to set up any claims or rights as now set up in their cross-action, they are now estopped from setting up any right, title or interest in and to said lands * * *." Plaintiffs alleged the land was not the homestead of John May and his second wife at the time of their deaths; that it had been abandoned by the said Mays. Plaintiffs also pleaded the 2, 3, 4, 5, and 10 year statutes of limitation.

The cause was submitted to a jury on special issues in answer to which the jury found: (1) that John May intended at all times from the date he moved to Abilene until his death to move his family back to the farm and occupy it as his homestead. (2) That a part of the purchase price of the farm was paid "after marriage of John May to Fannie May, and prior to the death of John May." (3) That the amount of the purchase price of the land in question paid "after the marriage of John May to Fannie May" was $500. (4) That permanent improvements were made on the farm "after the marriage of John May to Fannie May and before the death of John May." (5) That the value of the permanent improvements when made was $750. (6) That the present value of the improvements made on the farm "after the marriage of John May to Fannie May and before the death of John May" is $500. (7) That when Jessie Aman (now Bullock) was living on the farm with John and Fannie May "John May promised Jessie Aman that if she would live with them, take care of them, and look after her mother and do the house work, she would inherit his part of the farm." (8) That Jessie Aman relied on said promise. (9) That Jessie Aman continued to live with John and Fannie May, look after them, and take care of her mother and do the house work.

After the return of the verdict defendants filed a motion for judgment "in accordance with the verdict of the jury and the uncontroverted evidence * * *." Plaintiffs filed a motion to set aside the answers of the jury and grant a new trial, and, subsequently, a motion for judgment notwithstanding the verdict, which, omitting its formal parts, was as follows: "Now come the defendants in cross-action and move the court to render judgment non obstante veredicto in favor of said defendants in cross-action." Plaintiffs' motion for judgment non obstante veredicto was granted, and judgment was rendered that Sam R. Cox, Jr., have and recover of defendants the land in question, and decreed that defendants take nothing by their cross-action against plaintiffs. Defendants have appealed.

The undisputed evidence shows the farm in question was purchased by John May while he was married to his first wife, Mollie, and that $2440 of the purchase price of $3520 was paid in cash at the time of the purchase in 1907; that the unpaid bal-

ance was represented by 8 notes for $135 each, one note payable each year thereafter; that the land was the homestead of John and Mollie May at the time of Mollie's death in 1908; that John and Mollie May had three children who survived Mollie May, a daughter (Donnie Bell, later adopted by the C. B. Manlys), and two sons; that both of the sons died after their mother's death before attaining the age of 6 years. That Mollie May died intestate. That about 1913 John May married Mrs. Fannie Aman, the mother of several children, one of whom was Jessie Aman (now Bullock); that John May and his second wife, Fannie Aman May, and her child Jessie occupied the farm in question as their homestead. That before the death of Fannie May, John and Fannie May moved off the farm and into the town of Abilene, and lived with Jessie Aman Bullock and her husband, where John May died in October 1929 and Fannie Aman May died in November 1929, without thereafter returning to the farm. The evidence, at least, raised a question of fact as to whether or not there was an abandonment of the homestead of John and Fannie Aman May. We think the evidence is sufficient to sustain the answer of the jury to special issue No. 1, to the effect that John May intended from the time he moved to Abilene until his death to move his family back to the farm and occupy it as his homestead. There was evidence to the effect that John and Fannie May left the farm and moved to Abilene because Mrs. May was ill and needed to be near a doctor.

The evidence showed conclusively this farm had been the homestead of John and Fannie May. The jury having found that there was no abandonment of the homestead, and the undisputed evidence showing John May was survived by his second wife, Fannie Aman May, the homestead vested in the heirs of John May, freed of all debts, except those for taxes, purchase price, or improvements, none of which are shown to have existed at John May's death. Milner v. McDaniel, 120 Tex. 160, 36 S.W.2d 992; Thompson v. Kay, 124 Tex. 252, 77 S.W.2d 201.

Said land constituting the homestead of John and Fannie Aman May at the time of John May's death, and his second wife, Fannie Aman May, having survived him, the land was not subject to the payment of the debts of general creditors, such as those shown by the record, and was not subject to administration. The record not showing affirmatively that the questions of whether the property was homestead, or that the debts involved were such as are chargeable against a homestead were adjudicated by the probate court. Its order relative to the sale of the homestead and the administrator's deed to Cox were void and subject to collateral attack. Cline v. Niblo, 117 Tex. 474, 8 S. W.2d 633, 66 A.L.R. 916; Lacy v. Lockett, Adm'r, 82 Tex. 190, 17 S.W. 916; Ward v. Hinkle, 117 Tex. 566, 8 S.W.2d 641; Johnson v. Hampton, 117 Tex. 580, 8 S.W. 2d 640; Childers v. Henderson, 76 Tex. 664, 13 S.W. 481; American Bonding Co. v. Logan, 106 Tex. 306, 166 S.W. 1132; Padalecki v. Dreibrodt, Tex.Civ.App., 129 S.W.2d 481, 484; McKelroy v. Hamilton, Tex.Civ.App., 130 S.W.2d 1114; Panhandle Const. Co. v. Head, Tex.Civ.App., 134 S. W.2d 779, writ refused; 17 Texas Law Review 423.

Plaintiff Cox did not, therefore, establish title in himself justifying the judgment rendered. As between Cox and the Manlys we express no opinion as to whether by virtue of Manly's deed as administrator, or for any other reason, the Manlys cannot assert title to the interest they both seem to assert Cox has in the land. We find no acts by defendants sufficient to estop them from asserting the invalidity of the administrator's deed. Although plaintiffs alleged in this suit that defendants knew the administrator was selling the land for taxes, etc., the probate proceedings show no taxes, or other debt for which the homestead might be sold existed at John May's death. The inventory shows only this farm, a homestead. The claims shown do not include any debt for which the homestead was liable.

The property having been purchased by John and Mollie May during the existence of their marriage, partly with community funds and partly on the credit of that community, it became their community property in its entirety, notwithstanding part of the purchase price may have been thereafter paid by the second community, and notwithstanding the fact that the second community may have placed improvements thereon. The facts existing at the inception of the title in them fixed the status of said land as the community property of John and Mollie May, and such status was not affected by the sub-

sequent acts of the second community. John Hancock Mut. Life Ins. Co. v. Bennett, 133 Tex. 450, 458, 128 S.W.2d 791. If the jury findings that $500 was "paid after the marriage of John May and Fannie May" and a like finding as to improvements should be considered as a finding of the ultimate issues, to-wit, that $500 of the purchase price was paid by the second community, and that the present value of improvements paid for by the second community is $500, then such payments by the second community constituted only an equity or charge against the first community in favor of the second. The second community thereby acquired no title or interest in the land as such. Furthermore, it appears to have been definitely determined that unless defendants owned some title or interest in the property, entitling them to a partition (after the death of Fannie Aman May, which extinguished the homestead and life estate therein formerly held by Fannie Aman May, the property having descended and vested in the heirs of John May, freed of the claims of general creditors) defendants could not enforce their equity or charge against said property.

" '1. The charge or equity for improvements placed on land is not a right, title, or interest in the land as such. Curtis v. Poland, 66 Tex. 511, 2 S.W. 39; Schmidt v. Huppman, 73 Tex. 112, 11 S.W. 175; Hayworth v. Williams, supra [102 Tex. 308, 116 S.W. 43, 132 Am.St.Rep. 879].

" '2. In ascertaining and satisfying the equities of the parties, the court will secure to either, out of the common estate, satisfaction for money found due him by his co-tenant on an accounting. Moore v. Moore, 89 Tex. (29), 33, 33 S.W. 217. But this is only done as an incident of the proceeding to justly and equally distribute the property in accordance with the respective rights to which the parties are found entitled. It follows that an order for the sale of this property can only be justified as a necessary incident to a full and final partition.' Kalteyer v. Wipff, 92 Tex. 673, 52 S.W. 63, 68." Dakan v. Dakan, 125 Tex. 305, 319, 83 S.W.2d 620, 628.

Also, see Dakan v. Dakan, Tex.Civ. App., 52 S.W.2d 1070, 1074; Kalteyer v. Wipff, 92 Tex. 673, 52 S.W. 63; O'Neil v. O'Neil, Tex.Civ.App., 77 S.W.2d 554, 556; Davis v. Davis, Tex.Civ.App., 108 S.W.2d 681, 687.

Unless John May adopted the defendant, Jessie Aman (now Bullock) and as a result of such adoption and John May's intestacy, Jessie inherited one-fourth of the interest of John May, deceased, none of the defendants own any interest in the land and are not entitled to a partition in which proceeding alone such equitable charge can be adjusted. In the absence of an adoption of Jessie Aman by John May, the title to the land vested in Donnie Bell May, the grantor of the Manlys.

We have held that this land was the community property of John and Mollie May. At Mollie's death the survivor, John May, was entitled to one half the land and the other half passed to Mollie's children, two boys and Donnie Bell. (Art. 2578). When the first boy died his interest (1/6th) in the land passed one half to his father, John May, one-fourth to his brother and one-fourth to Donnie Bell; when the second boy died his interest (then more than 1/6th) in the land passed one half to John May and one half to Donnie Bell. (Art. 2570, sec. 2.) The result, according to our calculation, is that at the death of the second boy, John May owned a 33/48th interest, and Donnie Bell a 15/48th interest in the land. If Jessie Aman was adopted by John May and he died intestate in 1929, Jessie Aman acquired one-fourth of John May's 33/48th interest (Art. 43) and Donnie Bell inherited three-fourths thereof. (Art. 2570, sec. 1.)

We shall now consider the question of adoption. The record shows without dispute that when John May married her mother, Jessie Aman moved on the farm with her mother and stepfather, and stayed there with them until sometime after her marriage to Bullock; that she performed valuable services on the farm; that she attended her mother when she became ill, and that her stepfather, John May, was very fond of her; that after her marriage to John Bullock they continued to live on the farm in the same house with the Mays. There is evidence that thereafter Jessie and her husband left the farm and moved to Abilene with the consent of John May, and about a year thereafter John May and his wife, Jessie's mother, moved to Abilene and lived there with Jessie and her husband until the death of Mrs. Fannie Aman May, and John May in 1929.

Plaintiffs quote in their brief the following as the only evidence pertinent to the

750

issue of adoption of Jessie Aman by John May. Defendants point out no additional testimony. If not complete, it appears to be the substance of all the pertinent evidence. It is as follows:

1. "Well, he (John May) said she (Jessie) would inherit his part of the place."

2. "He told her if she would stay out there and help take care of her (Mrs. Fannie Aman May) and do the house work that she would inherit his part."

3. "He said if Bob (Jessie) would stay there and help take care of him and her mama she would inherit the property."

4. "Well, Jessie was wanting to go to work and he told her that if she would stay there and take care of her mother that he would heir her or give her his part."

5. "I (John May) am going to have it fixed before I die that Jessie will get what I've got."

■ We think such testimony is insufficient to show an adoption. The statutory method of adoption that existed at the time John May is alleged to have adopted Jessie Aman was prescribed by Arts. 42 and 43, as they existed prior to their repeal in 1931.

"Any person wishing to adopt another as his legal heir shall file in the office of the county clerk of the county in which he resides a written statement signed by him and duly authenticated or acknowledged as deeds are required to be, reciting in substance that he adopts the person named therein as his legal heir, and the same shall be admitted to record in said office.

"When such statement is so recorded it shall entitle any child so adopted to all the rights and privileges, both in law and equity, of a legal heir of the adoptive parent, as a child has by law against lawful parents. If the adoptive parent has at the time of such adoption or shall thereafter have, a child begotten in lawful wedlock, such adopted heir shall in no case inherit more than one-fourth of the estate of the adoptive parent."

In all of the cases in Texas approved by our Supreme Court where the statutory method of adoption was not complied with, yet the adoption was sustained, they appear to have been sustained upon the ground of estoppel. In such cases, the adoptive parents made a contract with the child, or his natural parent, or some person acting on behalf of the child, agreeing to adopt the child and thereafter lead the child, or such other person, to believe the child had been legally adopted and thereby acquired the services and affection of the child, and were, therefore, estopped to thereafter assert the child had not been formally and legally adopted. See Cheney v. Coffey, 131 Tex. 212, 113 S.W.2d 162, 114 S.W.2d 533; Cheney v. Cheney, Tex.Civ.App., 82 S.W. 2d 1024, 1026; Cubley v. Barbee, 123 Tex. 411, 73 S.W.2d 72. But in this case there was not the slightest effort made to comply with the adoption law. There is not a statement in the record that John May at any time contracted, agreed or promised Jessie Aman, or her mother, or any other person, that he would adopt Jessie Aman, or made any representation that he had done so. Jessie was never known as May. The evidence may indicate that John May planned to make a will giving his property to Jessie, or he may have believed that under the law Jessie would inherit his interest in the farm, but regardless of the fact that Jessie showed herself to be worthy of such consideration, we cannot avoid the conclusion that the evidence is insufficient to support a finding of adoption. Jordan v. Abney, Adm'r, 97 Tex. 296, 78 S.W. 486; Allee v. Vaden, Tex.Civ. App., 112 S.W.2d 237. Also see, Upson v. Fitzgerald, 129 Tex. 211, 103 S.W.2d 147; Fitzgerald v. Upson, Tex.Civ.App., 74 S. W.2d 1061; Moore v. Rice, Tex.Civ.App., 110 S.W.2d 973; Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216; 17 Tex.Law Review 339.

■ We do not agree with the contention that Donnie Bell May or Jessie Aman, if adopted, inherited that interest in the estate of John May, or John and Mollie May, deceased, that was *"paid for."* They inherited, if at all, as prescribed by the statutes of descent and distribution, regardless of whether or not the land in controversy was paid for when inherited; if not paid for, they inherited such interest, of course, subject to such debt for the purchase price.

■ Defendants assert the court erred in sustaining plaintiffs' motion for judgment non obstante veredicto. That it is incomplete and subject to exception because it states no ground, or reason, why the court should render such judgment is evident. Edmiston v. Texas & N. O. R. Co., 135 Tex. 67, 72, 138 S.W.2d 526; Amarillo Transfer & Storage Co. v. De Shong, Tex.Civ.App., 82 S.W.2d 381. However, the judgment shows defendants were given due notice of the motion; that they ap-

peared at the hearing of the motion, participated and heard evidence on the motion, all without any objection that it was insufficient. Our Supreme Court has held that where a defendant filed no answer and the plaintiff proceeded to trial and judgment as if an answer had been filed raising the issues determined in the case plaintiff waived any right to complain that defendant filed no answer. Texas Employers' Ins. Ass'n v. Marsden, 131 Tex. 256, 114 S.W.2d 858. Certainly, if by appearing and contesting a case, or motion, as if the case, or motion, had been duly pleaded constitutes a waiver of any right to complain of the fact that there was no pleading, such action would constitute a waiver of a right to assert error by virtue of the fact that a pleading was deficient. See 15 Texas Law Review 515. However, it is unnecessary for us to determine this question in view of the fact that because of other matters discussed the case must be reversed. It is not apparent that the case has been fully developed. We think in some respects it was tried upon the wrong theory.

The judgment is reversed and the cause remanded.

FUNDERBURK, J., dissenting.

FUNDERBURK, Justice (dissenting).

In most all respects I concur in the majority opinion. Nevertheless, as I see it, the proper judgment to be rendered is one affirming the judgment of the court below. Considered simply and only as a suit in trespass to try title with Cox as plaintiff, and Aman and others as defendants, the conclusion, under the majority opinion, is correct, to the effect that the invalidity of the administrator's deed to Cox requires a judgment against Cox. But the suit is more than that. By cross-action defendants became plaintiffs, and both Cox and the Manlys defendants, and, although as to the Manlys the nature of the action was one for partition, as to Cox it raised precisely the same issues of ownership of the land as Cox raised against the Amans. Under the pleadings, therefore, the court was fully empowered to determine the ownership of the land and render judgment for the owners, unlimited by the strict rules applicable, had the action been one in trespass to try title only with Cox the plaintiff and the Amans the defendants. According to the majority opinion, the

original defendants under the undisputed facts owned no interest in the land. On the contrary, it appears conclusively that upon the death of Fannie Aman May the entire ownership of the land vested in Donnie Bell May. Prior to the administrator's sale and conveyance to Cox, by conveyance from Donnie Bell May to C. B. Manly, the latter became the owner of the land. Presumably, he procured Cox to purchase the land to the extent of the interest therein owned by John May at the time of his death. Under the record Cox paid his own money for the land, and by such payment debts of the estate were paid, whether the land was liable for such debts or not. Granting, therefore, that because of the homestead character of the land and the vestiture of title thereto in C. B. Manly, the probate court was without power to authorize its sale for the payment of such debts, the conveyance of C. B. Manly, the owner of the land, was effective to pass by estoppel to Cox the purported title conveyed by said administrator's deed. In C. J.S. it is said: "As to whether a deed made in a representative capacity estops the grantor individually the cases are not in accord, for, while some of the courts have held that the grantor is not estopped to assert an individual right or title in derogation of the deed, the general rule is to the contrary, at least where there are general covenants, unless the deed expressly excepts or recognizes an interest in the grantor individually." 31 C.J.S. 227, Estoppel § 48. Cited as supporting the general rule is the Texas case of Surtees v. Hobson, Tex.Com.App., 13 S.W.2d 345.

Under the majority opinion it appears that Cox owns 33/48ths interest (the same interest owned by John May at the time of his death) and Manly owns the remaining 15/48ths interest.

But the pleadings neither tendered nor joined any issues as between Manly and Cox. They were represented by the same attorneys and filed a joint answer. The court having awarded all the land to Cox, and Manly not having excepted to the judgment or appealed, it would not be inequitable to affirm the judgment regarding it, even as settling any ground of controversy as between Manly and Cox. But that is not necessary. The record indicates a misapprehension as to the exact quantum of interest owned as between Cox and Manly, and the judgment of the court below does not purport to determine any

matter as between Manly and Cox. Therefore, I think, under the undisputed evidence, the proper judgment to be rendered is the one rendered by the trial court relating only to the controversy as between Cox and Manly on the one hand, and the Amans on the other hand, and determining such controversy in favor of Cox and Manly against Aman et al. To prevent misapprehension, it should be stated in our opinion or judgment that any issues as between Manly and Cox are not adjudicated.