**WINKLER et al.   v.   CRAVEN et al.**

No. 3140.

Court of Civil Appeals of Texas.

Waco.

Feb. 4, 1954.

Rehearing Denied March 4, 1954.

192

Eason & Eason, Waco, for appellants.

. Fitzpatrick & Dunnam, Waco, for appellees.

HALE, Justice.

Appellees brought this suit against appellants for the partition of certain property and an accounting with respect thereto. The action involves the construction and application of the probated will of J. B. Anderson, deceased. Appellants are the two children of the testator by his second marriage and appellees are the five children (or their heirs) of the testator by his first marriage. For a statement of the facts developed in the contested application to probate the will here involved, we refer to the prior opinion of this court in the case

of Winkler v. Craven, Tex.Civ.App., 250 S.W.2d 300, er. ref.

J. B. Anderson was married to his first wife, Octavia, on September 30, 1880 and lived with her until she died, intestate, on October 27, 1895. He was married to his second wife, Mattie, on May 13, 1897 and lived with her until April 19, 1926, when he died. On January 10, 1895 he and his first wife acquired 170 acres of land near Moody, Texas, by deed of that date, in consideration of $1,750 cash and the execution of six vendor's lien notes, one note being for $1,300, due December 1, 1895 and the other five notes being for $400 each, being due on or before December 1, 1896, '97, '98, '99 and 1900, respectively. On May 21, 1898, Anderson, as community survivor of himself and his first wife, being joined by his second wife, Mattie, sold and conveyed 57.93 acres out of the 170 acre tract for the sum of $1,882.72 in order to pay off the unpaid balance of the six vendor's lien notes above referred to and other community debts of himself and his first wife, thus leaving a residue of 112.7 acres of the original 170 acre tract. During the existence of his second marriage, Anderson and his second wife, Mattie, acquired as their community property an additional tract of 104.5 acres of land adjoining the 112.7 acres, a house and lot in the City of Waco and certain household furniture.

By the terms of the probated will of J. B. Anderson he devised and bequeathed to his second wife, Mattie, in trust for the use and benefit of his minor children during their minority and his unmarried daughters until their marriage, and for the use and benefit of his second wife until her remarriage or death, all of his property, with remainder to his seven children, share and share alike, subject, however, to the following provisions:

"Upon the death or marriage of my wife, Mattie Anderson, I will that the title to all of my property shall pass to my children, but I desire it to be distinctly understood that it is my will that my separate estate, my interest in the community estate, as well as my wife, Mattie Anderson's interest in said community estate, shall be divided equally among all of my children, seven in number, share and share alike, and that no distinction or difference shall be made between the children of my first wife and the children of my second wife. And while I shall not attempt to dispose of my wife's interest in said community estate, however, it is my will and I so direct, that my estate shall be divided in such manner that all my children may share alike in the combined estates of myself and my wife, Mattie Anderson. That is to say, if the said Mattie Anderson should by deed or gift of her own property, or by will or otherwise, bestow upon our children, Jimmie Anderson and J. B. Anderson, Jr., her entire estate, then my estate shall be divided among the children of my first wife, Octavia Anderson until each of their shares are equal to each of the shares received by Jimmie Anderson and J. B. Anderson, Jr., from their mother's estate, and the balance, if any, shall be divided equally, share and share alike, among all of my children. But it is expressly understood that said property shall not be divided or partitioned until the youngest of my children shall have attained his majority. But, upon the arrival of the youngest of my children then living, to the age of twenty-one years, my estate shall be divided among all my children, their portions to be equalized as hereinbefore expressly provided."

Upon the death of J. B. Anderson in 1926, Mrs. Mattie Anderson took possession of all the property bequeathed to her under the will of her deceased husband, including the two tracts of land and the house in the City of Waco. She rented the two tracts of land to her deceased husband's eldest son by his first marriage and continued to occupy the house in Waco as her homestead until she died intestate on October 5, 1950. Shortly after that time her married daughter, Mrs. Jimmie Lee Winkler, and husband took exclusive pos-

session of the house in Waco and continued to use and occupy the same as their place of residence until this case was tried on April 13, 1953. Under date of July 14, 1951 the appellees herein, acting by their attorney, made written demand of Mrs. Winkler and her husband for payment to them of their proportionate share of the rental value of the property they were occupying until the pending suit should be disposed of and the property divided between its joint owners.

The case was tried before a jury. In response to certain special issues the jury found that the reasonable market value of the 112.7 acre tract of land was $187.50 per acre, the value of the 104.5 acre tract was $180 per acre, the value of the house and lot in Waco was $12,500, the amount of rents received by Mrs. Mattie Anderson from the 112.7 acres from April 19, 1926 to October 5, 1950 was $27,500 and that the reasonable rental value of the house and lot in Waco from July 14, 1951 to the time of trial on April 13, 1953 was $110 per month. The trial court concluded from the findings of the jury and the material facts established by the undisputed evidence that the value of the shares of the estate of J. B. Anderson received by each of the appellees by virtue of his will did not equal the value of the shares received by each appellant from their mother's estate; that appellees are the sole joint owners of the 112.7 acre tract of land and as such are entitled to judgment against appellants for the title and, possession thereof and to receive the residue of the rents on deposit to the credit of Mrs. Mattie Anderson in the Bank at Moody at the time of her death in the sum of $11,387.84; that appellees are entitled to receive from Mrs. Winkler and husband their just and equitable share of the rental value of the house in Waco from July 14, 1951 to the time of trial in the total sum of $1,155, that appellees are entitled to receive their pro rata part of the rents collected by the Receiver from the two tracts of land after October 5, 1950, the same amounting to $4,916.92 for appellees and $1,466.63 for appellants; that the 104.5 acre tract, being susceptible of an equitable partition in kind, should be divided equally by Commissioners between appellants jointly and appellees jointly; that the house and lot in Waco and the household furniture, not being susceptible of an equitable partition in kind, should be sold by the court appointed Receiver and the proceeds derived therefrom divided equally between appellants on the one hand and appellees on the other, provided, however, that the sum of $1,617.82 should be deducted from the one-half awarded to appellants and that such sum should be paid over to appellees to compensate them for a deficiency in that amount of one-half of the net rents received by Mrs. Mattie Anderson from the 112.7 acre tract of land. Judgment was rendered accordingly.

Although appellants present 12 "points" in their brief, we think the substance of their contentions may be briefly summarized as follows: (1) the evidence was insufficient to support the finding that Mattie Anderson received $27,500 as rents from the 112.7 acre tract of land; (2) the action for recovery of such rents was barred by the two and four year statutes of limitation; and (3) the trial court erred (a) in holding that the value of the shares of the estate of J. B. Anderson received by each appellee under his will did not equal the value of the shares received by each appellant from their mother's estate and (b) by disposing of the property and assets involved in the suit in the manner set forth in the judgment as above indicated.

In passing upon the sufficiency of the evidence to support the findings of a jury, it is the duty of the courts to view the evidence as a whole and all reasonable inferences and deductions that may properly be drawn therefrom in the light most favorable to sustain the verdict. Furthermore, the existence of any disputed issue of fact may be established by the proof of sufficient circumstances relating to such issue, as well as by direct evidence. While there was no direct evidence in this case as to the exact amount of the total of the rents which Mrs. Anderson received from the 112.7 acres from April 19, 1926 to Oc-

tober 5, 1950, we think the jury was warranted in finding from all the facts and circumstances in evidence that such rents were not less than $27,500.

The evidence showed that Mrs. Anderson's only source of income was the rents she received from the farm which consisted of the two tracts of land. These rents were deposited to her credit in the First National Bank of Moody. The bank records of her account could not be found for the years from 1926 to 1929, inclusive, or for the years from 1935 to 1939, inclusive, but the available ledger sheets which were introduced in evidence on the trial show a total of $7,315.65 deposited to the credit of Mrs. Anderson from October 11, 1930 to August 3, 1935, and a total of $29,941.46 deposited to her credit from 1939 to 1950. The evidence also shows that the Receiver appointed by the court to collect the rents for 1951 and 1952 kept a separate account of the amount derived from each of the two tracts for each of these years, that the 112.7 acre tract produced 53.08% of the total rents received and the 104.5 acre tract produced 46.92% of such rents. The evidence further shows that the sale price of farm products, such as were grown on the farm under consideration, was considerably higher in the periods from 1926–1929 and 1935–1939 than in the period from 1930–1934. It appears to us that the jury could properly infer from the evidence as a whole that the average amount of the rents received for each of the years from 1926–1929 and from 1935–1939 was at least equal to the average received from 1930–1934, and that the 112.7 acre tract produced 52.08% of the total amount of rents for each year. It also appears from mathematical calculations, based upon such inferences and all the other facts in evidence, that the total amount of the rents derived from the 112.7 acre tract from 1926–1950 was slightly in excess of $27,500. Therefore, we cannot say the finding of the jury in this respect was without proper support in the evidence.

We do not think the cause of action declared upon by appellees or any element of the recovery sought or secured by them was barred by the two or the four year statute of limitation at the time this suit was instituted on June 19, 1951. Their asserted right to a partition and accounting in keeping with the terms of the testamentary trust created by their deceased father did not accrue or mature until the death of their step-mother on October 5, 1950. Their father did not want his property or the rents and revenues derived therefrom to be divided during the lifetime of his surviving widow. On the contrary, he wanted all the property belonging to the members of his family to be held in trust by Mrs. Anderson in order that she might use the net revenues to be derived from it for the use and benefit of herself and his minor children and unmarried daughters. Appellees did not know and could not ascertain until the death of Mrs. Anderson, whether she would bestow upon appellants herein her entire estate, or whether the value of the shares which each appellant might receive from the estate of their mother would be greater than the value of the shares which each appellee would receive from the estate of their father.

There was no evidence showing or tending to show that Mrs. Anderson ever at any time repudiated or attempted in any manner to repudiate the trust reposed in her by her deceased husband and by the children of his first marriage, or that any of the appellees, they being married women, had any knowledge or notice of any intended repudiation of the trust on her part. It is the settled law of this state that limitation does not begin to run against the beneficiary of a trust for the enforcement thereof until the trust is repudiated by the trustee and knowledge or notice of such repudiation is acquired by the beneficiary. Cole v. Noble, 63 Tex. 432; Hand v. Errington, Tex.Com.App., 248 S.W. 25, Pt. 2; Hamilton v. First National Bank of O'Donnell, Tex.Civ.App., 155 S.W.2d 626, Pt. 5, er. ref.; Hayward v. City of Corpus Christi, Tex.Civ.App., 195 S.W.2d 995, Pt. 13, er. ref. n.r.e.; McGowen v. Montgomery, Tex. Civ.App. 248 S.W.2d 789, Pt. 7.

■ Furthermore, the amount of the net rents or profits received by Mrs. Anderson from the 112.7 acre tract and the recovery awarded to appellees by reason thereof was merely incidental to the action for a partition and accounting under the trust relationship existing between herself, her former husband and appellees, whether such be regarded in whole or in part as an express testamentary trust or a constructive trust or a combination of both. Consequently, the enforcement of such incidental right of recovery would not be barred by any statute of limitation so long as the right of appellees to enforce an equitable partition and accounting with respect to the property in controversy continued to exist. Kalteyer v. Wipff, 92 Tex. 673, 52 S.W. 63; Markum v. Markum, Tex.Civ. App., 273 S.W. 296, Pt. 9, er. dis. and authorities.

■ In our opinion, the findings of the jury and the facts established by the undisputed evidence show conclusively that the value of the shares of the estate of J. B. Anderson received by each appellee under his will did not equal the value of the shares received by each appellant from the estate of their mother. Since Octavia Anderson died intestate, her undivided one-half interest in the 112.7 acre tract passed to appellees, subject to her husband's estate for life in one-third thereof, under the provisions of art. 2571 of Vernon's Tex.Civ. Stats. Upon the death of Mattie Anderson intestate, her undivided one-half interest in the 104.5 acres of land, the house and lot in Waco and the household furniture passed to appellants. Art. 2570, Vernon's Tex.Civ.Stats. The value of her one-half interest in the 104.5 acres and the house and lot in Waco, was $15,665. This value, less the deduction of $1,617.82 allowed to appellees to compensate them for a deficiency in that amount for the net rents received by Mrs. Anderson from their one-half interest in the 112.7 acres, amounted to $14,- 037.18, so that the value of each share received by appellants from the estate of their mother was $7,018.57. The value of the one-half interest belonging to the estate of J. B. Anderson in the 112.7 acres, the 104.5 acres and the house and lot in Waco,

amounted to $26,230.62, so that the value of each share received by appellees under the will of their father was $5,246.12. Since, under the judgment of the court, one-fourth of the proceeds to be derived from the sale of the household furniture is to pass to each appellant and one-tenth thereof to each appellee, it is immaterial to the point here under consideration as to what the value of the furniture might be.

■ Appellants contend that the money on deposit to the credit of Mrs. Anderson in the bank at Moody at the time of her death on October 5, 1950, belonged to her unconditionally, even though the same was derived from rents, and that upon her death intestate they became the owners thereof under the statutes of descent and distribution. We cannot agree with this contention. At all times after the death of her husband, Mrs. Anderson held all of the property belonging to his estate, including the rents derived therefrom, in trust for the purposes and uses expressed in his will. It is also apparent from his will that J. B. Anderson intended for his wife, Mattie, to hold the one-half interest which appellees had inherited from their deceased mother under the same conditions set forth in his will with respect to his property, and we think the evidence shows that appellees and Mrs. Anderson sought to give effect to such intention. But, regardless of what the intention of the parties at interest might have been in this respect, so long as she continued to collect and retain all the rents accruing from the 112.7 acres, one-half thereof would undoubtedly become impressed with a constructive trust for the ultimate benefit of appellees, and consequently Mrs. Anderson did not become the unconditional owner thereof so that she could, by dying intestate, bestow the same upon her two children and thereby unjustly enrich them to the corresponding detriment and loss of appellees, who were the equitable owners thereof.

■ In the case of Simmons v. Wilson, Tex.Civ.App., 216 S.W.2d 847, 852, this court had before it for consideration a suit based upon an accounting under a constructive trust. As there stated, the broad func-

tion of constructive trusts is to redress wrong or unjust enrichment in keeping with established principles of equity and justice. 42 T.J. p. 649, Secs. 45–47; 54 Am.Jur. p. 167, Sec. 218; 65 C.J. p. 454, Sec. 215; Restatement of the Law of Trusts, Part I, pp. 5–6; 3 Bogert on Trusts and Trustees, Sec. 471; Pomeroy's Eq.Jur., (5th Ed.) Vol. 1, p. 209, Sec. 155; 1 Perry on Trusts, (6th Ed.) Par. 186. As said in that opinion, "In the discharge of its duty and exercise of power to do justice between parties to a transaction or series of events, irrespective of how complicated the same may be, a court of chancery rejects all shades of sophistry and subterfuge as it seeks to ascertain and give effect to true intent and meaning. It considers substance rather than form." To permit appellants to recover the rents accruing over a period of 24 years from land which admittedly belongs to appellees would, in our opinion, do violence to an innate sense of justice.

 Appellants further say they should have been given credit in the accounting for whatever sum of money J. B. Anderson and their mother, Mattie, may have paid out of their community funds in discharging the six vendor's lien notes which were executed on January 10, 1895 as part of the purchase price for the 112.7 acre tract of land. It may well be conceded that such contention on the part of appellants is correct as an abstract proposition of law. However, we do not think the proposition is of any controlling effect in its application to the record before us, for several reasons. In the first place, the burden was upon appellants to show the amount, if any, of the community funds of the second marriage that were used in paying off this indebtedness, and we do not think the evidence was of sufficient probative force to form the basis for a legal inference that any of the community funds of the second marriage were used to pay off any of the community debts of the first marriage or, if so, as to the amount thereof. But, if the evidence did raise such issue or issues, and if the trial court erred in failing to submit the same to the jury, appellants did not assign such failure as a ground of error in their motion for new trial and consequently such error, if any, is not properly presented for review in this court.

Appellants further contend in effect that the court erred in charging them with one-half of the rental value of the house and lot in Waco from July 14, 1951 to April 13, 1953 in the sum of $1,155 because they and appellees, as joint owners thereof, were tenants in common and the evidence shows they had never ousted appellees from the premises or denied to them the right to occupy the house jointly with them. It is readily apparent that the seven or more families involved in this litigation could not jointly occupy the house at the same time and, therefore, we overrule appellants' contention in this respect on the direct holding in the case of Oechsner v. Courcier, Tex.Civ.App., 155 S.W.2d 963, er. ref.

Finding no error in the record before us, all of appellants' points are overruled and the judgment of the court below is affirmed.