### L. M. CLARK AND WIFE v. NOLAN & CAMPBELL.

1. At the death of the wife, the title to one-half of the homestead passes to and vests in the children of the marriage; and that half passes beyond the husband's power of alienation.

2. In changing a rural homestead into a town homestead, the lots made in dividing up the land, not used as a homestead, but merely kept for purpose of sale or speculation, becomes by such change community property; and at the death of the wife an undivided one-half interest passes to and becomes vested in the issue of the marriage, to the exclusion of all power or authority in the surviving husband over it.

APPEAL from Grimes. Tried below before the Hon. James R. Burnett.

The facts sufficiently appear in the opinion of the court.

*Boone & Hutcheson*, for appellants.

*John C. Easton*, for appellees.

OGDEN, J.—In 1856 James Nolan purchased from M. J. Duke one hundred and twenty acres of land within the present location of the city of Navasota, and settled upon it, with his wife and one child, as his homestead. In 1859 Nolan and wife deeded to the Houston & Texas

Central Railroad eighty acres of this land for a depot. About the same time Nolan laid off the remaining forty acres, which was the community property of himself and wife, into lots, blocks, streets and alleys, as a part of the town of Navasota, for the purpose of making sale of the same as town or city property; and, about the same time, he built a hotel, and other necessary buildings, upon two of the blocks, and moved his family into the same as his homestead. In the year 1860 Margaret Nolan died, leaving her husband and one child surviving, who continued to reside on the lots occupied by the hotel, until the marriage of Martha, the child, to Clark, one of the appellants. After the death of his wife James Nolan sold the lots, now the subject of this suit, and the daughter, Martha Clark, as the sole heir of Margaret Nolan, together with her husband, has brought this suit to recover the one-half of the land which she, Martha, claims to have inherited from her mother.

The cause was submitted to a jury in the District Court, and a verdict and judgment was rendered against the plaintiffs, and they have appealed.

There is no question that the land was the community property of James and Margaret Nolan, neither is there any question that it formerly composed a part of the homestead of James Nolan and his family. And the only questions presented by the record, which require a decision by this court, are, could James Nolan, after the death of his wife, Margaret, sell the homestead, or any part of the same, and make a full and perfect title to the purchaser? And if so, then were the lots, the subject matter of this suit, a part of the homestead of James Nolan at the time of the sale by him?

The homestead exemption, as provided for by the Constitution and laws of this State, was designed mainly as a protection against the eager pursuit of creditors; to se-

27

cure to the families of those who had been unfortunate in financial matters a home and a shelter, where the officers of the law dare not intrude. It is therefore wisely and humanely provided by the Constitution, that the homestead shall not be subject to forced sale. It is also intended as a special protection to the wife and helpless children of an improvident, reckless or worthless husband and father; and hence the provision, that the homestead shall not be sold, or encumbered, without the emphatic sanction of the wife, expressed in the most solemn manner. But when there are no creditors demanding payment of their debts, and no wife or family to be protected, or to interpose an objection to the disposition of the homestead, then the reasons for a constitutional or legal dedication no longer exist, and the property, which may once have been held as such, will no longer be subject to the rules or restrictions controlling the homestead as such.

It appears pretty certain that at the time of the death of Margaret Nolan neither she nor her husband owed any debts chargeable to their community property. If this be so, then Article 1305 expressly declares, that the homestead rights shall not prevent the partition and distribution of the estate of the deceased among her heirs and distributees. If this forty acres of land in Navasota was the community property of James Nolan and his wife Margaret, and at her death there were no community debts to be paid out of that property, then one-half of the land went to and became the absolute property of the survivor; and the other half immediately passed to and vested in her child and only heir, and became as absolutely the property of that child as the other half did of the survivors: and from the death of the wife and mother the father and child became equal owners, and tenants in common, of all the community estate of the deceased wife and surviving husband. Their estates and interests were,

in all things, separate and distinct, excepting that of possession and the right of possession. The father could no more alienate or encumber the rights or title of the daughter than the daughter could those of the father. The interest of the one was entirely distinct and independent of the other, and either might have demanded a partition of all the community estate after the satisfaction of the community debts, unless the actual homestead be excepted by the law from such distribution, and the use of it given to the survivor and minor children, so long as they remained a family, and the survivor the head of that family.

Whether James Nolan, after the death of his wife, and after the marriage of his only child, was entitled to the use of his former homestead, in exclusion of the right of that child, who was a tenant in common with him in that homestead, is a question which does not call for a decision in this cause, as other questions, more directly presented, must settle the rights of both parties. But we have no hesitancy in deciding that, under our law, the title to one-half of James Nolan's homestead even, at the death of his wife, Margaret, passed to and vested in his and Margaret's daughter, Martha; and, as a legal sequence, that half passed beyond his power of alienation, and any attempt on his part to sell or alienate that half interest was without authority of law, and therefore void. We think we are fully sustained in this view of the law, by the decision of this court, as enunciated by Chief Justice Hemphill, in the case of Sossaman v. Powell, 21 Texas, 664, and in many other cases subsequent to that decision.

We are also of the opinion that the act of 1856, Article 4648, Paschal's Digest, cannot be invoked as giving to Nolan the power of alienation of the community property, for the reason that there is no pretense that he ever complied with any of the terms of that act, which are pre-

scribed as pre-requisite of the power conferred. Under this view of the law we have no hesitancy in deciding that the surviving husband or wife has no more power of alienation over the homestead of a solvent estate, it being community property, than over any other portion of the realty belonging to that community. We think the testimony of C. C. Caldwell, on the trial of this cause, the donation to the Central Railroad, and the gift to his son-in-law, show pretty conclusively that James Nolan was not insolvent at the death of his wife, Margaret; and his subsequent indebtedness or insolvency could in no way affect his rights in or power over the community property of himself and his deceased wife. We think that the cases of Cragg v. Thompson, 24 Texas, 582, and Good v. Coombs, 28 Texas, 34, and others, fully sustain us in the foregoing opinion; and further, that the cases of Brower v. Wall, 28 Texas, and Tadlock v. Echols, 20 Texas, by no means come in conflict with either.

We might content ourselves with the decision of this first question raised by the record, as that must settle all others presented in this cause, but there is another which in our opinion is equally decisive of the rights of the parties to this suit, and which is distinctly presented by the pleadings in the case. Were the lots in controversy a part of the homestead of James Nolan and his wife, Margaret, at the time of her death, or were they a part of his homestead at the time of the sale by him? There can be no question that the homestead of Nolan and family originally covered the whole 120 acres purchased from Duke, and that there was no power in the Legislature, by the incorporation of the city of Navasota, or otherwise, to change, restrict or control that homestead, without the consent and approval of Nolan and wife. But Nolan and wife could at any time sell the whole or a part thereof at pleasure, and thereby destroy or ma-

terially change their homestead rights.    There can be no
doubt that they had a right to donate or sell to the Cen-
tral Railroad eighty acres of that land, and thereby re-
duce their homestead to forty acres, which was still a
rural homestead, and we can see no good reason why
they should not have the authority to reduce that still
further, and to convert the same, at pleasure, into a town
or city homestead.

It may be true that they could not convert their home-
stead into a city without an act of incorporation, but it
has been decided that the act of incorporation could not
affect the homestead rights ; and besides, it requires no
act of incorporation in this State to constitute a town.
There can be no doubt that they had a right to do as they
did in laying off their entire homestead into lots, blocks,
streets and alleys, and to build up a town on the same,
by selling lots for business houses, residences and other
purposes, and to select a residence and restricted home-
stead for themselves, while at the same time they caused
a large number of town homesteads to be selected and
built up around them.    But it is most clear that by this
act of theirs they voluntarily changed their homestead
from a country to a town homestead, as contemplated by
the Constitution and laws of this State.    As a question of
fact, they voluntarily abandoned their country homestead
as such, and placed it beyond their power to resume it,
or use it for the ordinary purposes of a country home-
stead, as contradistinguished from a town or city home-
stead.

Nolan, with the consent of his wife, laid off their land
into town lots ; they sold or abandoned their old resi-
dence as a homestead, and built up and moved into
another, and thereby they changed their country to a
town homestead..  It would appear inconsistent with any
definite idea of a distinction between a country and town

homestead, that Nolan should sell off lots and cause town homesteads to be erected all around him, and still preserve the right to claim the remainder of his land as a country homestead.

And now the only remaining question which need be noticed in this opinion, is, what is the extent of that town homestead; or rather, are the lots described in plaintiff's petition a part of that homestead? Giving the widest scope to the term town or city homestead which has been applied by any judicial interpretation in this State, it extends only to such lot or lots as are used for the convenience of the family, such as gardens or yards used and occupied for the convenience of the family, and the lot containing the office of a professional man, the shop of the mechanic, or the business house of the merchant, etc. (Prior v. Stone, 19 Texas, 372; Hamilton & Hancock v. Morgan and Wife, 17 Texas, 582; Methery v. Walker, 17 Texas.)

It is true that limitation is not to the number, but the value of the lots, and yet it is believed that a town or city homestead cannot properly be said to include vacant unoccupied lots, unappropriated to any use for the benefit of the family. Nor can the homestead legitimately be said to cover such lots as are held for the sole purpose of sale or speculation. It is believed that one lot worth not more than $500, if it alone be occupied as the homestead of the family, or used for the convenience of that family, will limit the extent of that homestead, in a town or city, as fully as though it was worth $5000.

There is no evidence in the record that Nolan ever used or occupied the lots in controversy, in any manner whatever, for the benefit of his family, after he had laid off the same into town lots, and we have failed to discover any reason or authority for including them within his homestead. They were, therefore, simply a part of the

community estate of James Nolan and his deceased wife, Margaret; and, at her death, the title to one undivided half of the same passed to and vested in her daughter, and only heir, in complete exclusion of all power or authority in the surviving husband over the same. And any attempt he may have made to convey more than his one-half interest, must be regarded as a mere nullity.

There is, therefore, manifest error in the judgment of the District Court, and it will be reversed, and the cause remanded for a new trial, in accordance with this opinion.

REVERSED AND REMANDED.