## CLEMENT v. FIRST NAT. BANK OF PARIS. (No. 509–3940.)

(Commission of Appeals of Texas, Section A. March 12, 1924.)

**1. Homestead &#8799;107—Excess in value may be sold under execution.**

An excess in the value of an urban homestead is subject to be levied upon and sold under execution to satisfy ordinary debts, and, when the property is not susceptible of partition, it may be sold and the excess applied to the payment of such debts.

**2. Homestead &#8799;103—Lien on excess in value of homestead.**

When a judgment is properly abstracted and recorded, the lien thereby created attaches to the excess in the value of an urban homestead.

**3. Homestead &#8799;107—Levy on homestead fixes lien on excess value.**

The levy of execution upon a homestead fixes a lien on the excess in the value of an urban homestead.

**4. Homestead &#8799;107—Sale of excess value under execution.**

There being no statutory procedure prescribed for determining the excess value of an urban homestead prior to sale under execution, equity requires that the amount of excess in value be ascertained, and if possible segregated before sale, and, if the property is not susceptible of partition so that the homestead may be segregated, it should at least be determined what percentage of the value of the whole property is subject to sale, and this definite interest should be offered for sale.

**5. Homestead &#8799;197—Court held authorized to adjudicate question as to amount of excess value in homestead.**

In action to enjoin sale of urban homestead under execution, the district court was authorized to adjudicate question as to amount of excess value in the land, exclusive of improvements, and the value of improvements, and to determine whether or not the property was susceptible of partition.

**6. Homestead &#8799;109—Creditor not entitled to proceeds of sale of improvements on homestead.**

Where execution is levied on an urban homestead, creditor is entitled to nothing out of the proceeds of sale of improvements on the land; his rights being limited solely to the excess in value of the land.

**7. Homestead &#8799;107—Mode of sale of excess in value under execution.**

Where execution is levied on urban homestead, and the value of the land without improvements is $8,400, and the improvements are worth $9,000, the owner is entitled to the value of the improvements, making a total of $14,000 or $70/87$ of the value absolutely exempt, and only the remaining $17/87$ can be sold.

**8. Homestead &#8799;107, 197—Sale of excess interest held not permissible under execution; procedure stated.**

Under an execution levied on the entire homestead property, a sale of an undivided interest equal to the excess value could not be had, and the court, in a suit to enjoin a sale, should set aside the execution and direct the clerk to issue its own order for sale of the undivided interest.

**9. Homestead &#8799;107—Request by widow that part be sold first under execution should be respected.**

Where homestead, part of which has been conveyed by the husband to the wife, is levied on under execution after the husband's death, and the widow requests that the part remaining in the husband's name be sold first, such request should be respected.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Suit by Mrs. M. N. Clement against the First National Bank of Paris. From a judgment of the Court of Civil Appeals (245 S. W. 719) affirming a judgment for defendant, plaintiff brings error. Reversed, and remanded with instructions.

Wm. H. Clark, of Dallas, and W. L. Willie, of Paris, for plaintiff in error.

Long & Wortham, of Paris, for defendant in error.

GERMAN, P. J. In the year 1911, W. R. Clement and his wife, Mae N. Clement, established their homestead on a lot of land in the city of Paris, Tex., fronting 48 feet on Main street, which was the property of W. R. Clement. At the time said property was designated as a homestead, it was of the value of $8,400, exclusive of the improvements. On May 25, 1917, W. R. Clement, by deed of gift, conveyed to his wife a portion of said lot off the south, fronting 27 feet on Main street, and running back 108 feet. The balance of 21 feet by 75 remained in the name of W. R. Clement. At the date of the deed of gift W. R. Clement was indebted to the First National Bank of Paris in the sum of $300, and owned no property other than the homestead. Afterwards he borrowed other amounts from the bank, prior to his death in 1919. On February 2, 1921, the bank reduced its debt to judgment in the county court of Lamar county; the judgment amounting to $920, and being rendered against Mae N. Clement as the executrix of the estate of W. R. Clement. November 28, 1921, execution was issued on this judgment, and on November 29th was levied by the sheriff of Lamar county on the entire lot of land fronting 48 feet on Main street. It was advertised for sale on January 3, 1922, under said execution.

December 31, 1921, Mae N. Clement, in her own right and as executrix of the estate of

W. R. Clement, filed this action in the district court of Lamar county, praying for an injunction to restrain the sale of said property, claiming that the whole of same was her homestead and was exempted from forced sale under the Constitution and laws of the state. Temporary injunction was issued. The First National Bank of Paris and the sheriff answered, claiming that the property covered by the writ of execution was not the homestead of Mrs. 'Clement, but also alleged that, if it were her homestead, there was an excess in its value over and above the constitutional limitation of $5,000. It was also alleged that the property was not susceptible of partition, and the prayer was for the court to dissolve the temporary injunction and that the property be sold; but, if the court should find that the same was the homestead of Mrs. Clement, then the excess thereof be applied to the payment of the judgment debt. There was also prayer for general and special relief.

A hearing was had March 27, 1922. The court found the facts as hereinbefore set out. The excess in value of the lot without the improvements was found to be $3,400, and this was apportioned by the court $1,470 to the north 21 feet and $1,890 to the south 27 feet. The temporary injunction was dissolved, and the sheriff was directed to proceed under the execution to sell the north portion of the lot fronting 21 feet on Main street and the proceeds thereof to the amount of $1,470 be applied to the satisfaction of the judgment. It was provided that if, from the sale of the north 21 feet, there was not realized a sufficient amount to pay the judgment out of the excess, then the south 27 feet be sold and the proceeds to the amount of $1,890 be applied to the payment of any balance due on the judgment. Mrs. Clement prosecuted an appeal to the Court of Civil Appeals at Texarkana, and there the judgment of the trial court was affirmed. 245 S. W. 719. A writ of error was granted by the Supreme Court for the purpose of hearing the case. The parties will be designated as in the trial court.

There is but one question raised and presented that requires our attention. Being a question concerning the homestead provisions of our Constitution, we have given it careful consideration, although the manner in which it was raised and presented on the appeal is by no means in strict compliance with the rules.

[1-3] It now seems to be definitely settled in this state that an excess in the value of an urban homestead is subject to be levied upon and sold under execution to satisfy ordinary debts, and that when the property is not susceptible of partition it may be sold and the excess applied to the payment of such debts. Harrison v. First National Bank of Lewisville (Tex. Civ. App.) 224 S. W. 269,

affirmed in (Tex. Com. App.) 238 S. W. 209; Barnett v. Eureka Paving Co. (Tex. Com. App.) 234 S. W. 1081. It seems also settled that when a judgment is properly abstracted and recorded the lien thereby created attaches to the excess in the value of the homestead, and also that the levy of an execution fixes a lien on such excess.

[4] The execution in this instance described the whole property and contained no reference to the homestead claim of plaintiff or any excess therein. We are not required to decide what would be the rights of the purchaser at a sale under this execution, nor what the result would be if the levy was made in the first instance upon the actual or supposed excess in the value of the homestead, and no question as to homestead was raised, in either case, before the sale. There is no statutory procedure provided for determining the excess value of an urban homestead prior to sale under execution, nor for the setting aside of the homestead from the excess. Definite provisions have been made for designating and segregating the excess in a rural homestead prior to sale and for the sale of the excess only. Where the homestead claim is asserted in a proper proceeding before sale is made under execution, we think equity requires that the amount of excess in value of an urban homestead be ascertained, and if possible the excess segregated from the homestead before sale is made. To require less would likely result in injustice and a sacrifice of both the homestead and the excess. At public sale no one would be justified in bidding without some definite knowledge of the value of what was actually being sold. If the property is not susceptible of partition, so that the homestead may be segregated from the excess, and only the excess be sold, it should at least be determined what per cent. of the value of the whole property is subject to sale, and this definite interest be offered for sale.

[5] In the present instance we think the district court was fully authorized to adjudicate the question as to the amount of excess value in the lot of land, exclusive of improvements, and the value of the improvements, and to determine whether or not the property was susceptible of partition, but we think the court erred in its decree with reference to the sale of the property and the distribution of the proceeds.

[6] The court found that the value of the lot of land at the time it was designated as a homestead, without the improvements, was $8,400, and that it was of the same value at the time of the trial. The value of the improvements at the date of the trial was $9,000. The court ordered the 21 feet off the north of the lot to be sold first, and the proceeds of the sale up to $1,470 be applied to the payment of the judgment, and, if from

the sale of this portion a sufficient amount was not realized to pay the judgment, then the 27 feet off the south be sold and the proceeds up to the amount of $1,890 be applied to the payment of the debt. This order entirely ignored the rights of Mrs. Clement to any part of the proceeds until the debt was paid. In no event, it seems to us, could the creditor be paid except upon a pro rata basis. The bank was entitled to nothing out of the proceeds of the sale of the improvements. They are entirely exempt to the plaintiff. The bank's right is limited solely to the excess in value of the lot of land. The two cannot be separated, but the improvement must be sold with the land.

[7-9] What, then, is the proper basis for arriving at the interest in the property which may be subjected to the payment of defendant's debt? The value of the lot without the improvements was $8,400, which was $3,400 in excess of the homestead limitation. Of this amount Mrs. Clement is entitled to the sum of $5,000. She is also entitled to the value of the improvements, which is $9,000, making a total of $14,000 value in the entire property, which is absolutely exempt under the Constitution. Her interest therefore in the entire property is $14000/17400$ or $70/87$ thereof. The interest remaining as subject to execution is $17/87$ of the whole. This is the only interest on which a valid lien exists by reason of the execution levy. This undivided interest may be sold and conveyed the same as any other definite undivided interest in real property. We doubt whether the parties are in position to demand a sale of the whole property and a partition or distribution of the proceeds until the interest subject to execution has actually been sold and become a vested interest. At any rate the pleadings in this instance did not authorize a procedure of that kind. It might be a purchaser of this undivided interest would prefer to hold the property with Mrs. Clement as a tenant in common. Nor do we think this undivided interest could be sold under the original execution. Looking to that instrument for his authority the officer could not sell an undivided interest, but would be required to sell the whole property. The court should have set aside the execution and directed the clerk to issue its own order for sale of the undivided interest. We are unable to see the wisdom or necessity for selling the undivided interest in the 21 feet first, as it would appear to be to the interest of all parties to sell the undivided interest in the whole property at one time. However, if Mrs. Clement should request that the 21 feet be sold first, the court should respect that request. After the sale of this undivided interest in the property, if the purchaser should desire a partition, the statute prescribes the method of procedure. If in a proceeding to partition it should be determined that the property was not susceptible of partition without sale, the sale could be made as provided by law and the proceeds of sale distributed in proportion to the respective interests of the owners.

We recommend that the judgment of the Court of Civil Appeals and the judgment of the district court be reversed, and the cause remanded, with instructions to the district court to enter judgment ordering sale of an undivided interest of $17/87$ of the property, that the proceeds from the sale of this interest be applied to the payment of defendant's judgment, with interest, and the balance, if any, be paid to plaintiff, and that defendant pay all costs.

CURETON, C. J. Judgments of the Court of Civil Appeals and district court both reversed, and judgment rendered, in accordance with the recommendation of the Commission of Appeals.