**WILLIAMS v. SINCLAIR PRAIRIE OIL CO. et al.**

No. 6614.

Court of Civil Appeals of Texas. Texarkana.

Feb. 28, 1952.

W. C. Holcombe, Hurst & Burke and L. F. Burke, all of Longview, for appellant.

Smead & Harbour and Philip Brin, all of Longview, Wynne & Wynne, Angus G. Wynne, Bedford S. Wynne, Wm. A. McKenzie and Sanford, King, Estes & Cantwell, all of Dallas, Paul A. McDermott, Ft. Worth, for appellees.

HALL, Chief Justice.

This suit was an appeal to the District Court of Gregg County by writ of certiorari to the probate court of said county and had for its purpose the testing of certain orders of the probate court respecting the sale of appellant's portion of a claimed 10.-64 acre tract of land in the John Ruddle Survey (hereafter referred to as the 10 acre tract). Appellant at the time the probate court entered the orders complained of was insane, with his father, N. E. Williams, as his guardian. Shortly before this suit was filed, however, he was declared sane. Trial was to the court without a jury and resulted in a judgment for appellees, upholding all orders of the probate court sought to be set aside. To better illustrate the contentions of the parties and to show the 10 acre tract of land and those tracts adjoining it, the following map is inserted:

At the beginning of the trial in the court below appellant's attorney made the following statement to the court as to what he would be required to establish upon the trial in order to recover the 10-acre tract. This statement is one of the court's findings of fact: "I expect to put on proof to show that these three wells were not on the 46.2 acre tract, as bought by the Sinclair, but that these three wells were drilled on that 10.64 acre tract that was not included within the boundary of the Sinclair lease. It's my contention that this $750 was an unconscionably low price to have sold the fee simple title to half the interest in a 10.64 acre tract surrounded by wells and three wells on it. Now, I think the burden is going to be on me to show where these three wells were and that they were on this 10.64 acre tract and this 10.64 acre tract was not part of the 46.2 acre tract as purchased by the Sinclair, and the Sinclair lease not having a Mother Hubbard clause in it, couldn't come down to where the fence lines were south of it and claim under a Mother Hubbard clause they have the 10.64 acre tract. I do expect to put on proof to show, I think the burden would be on me, and if I didn't show it, the unconscionableness of the sale price, I wouldn't meet my burden." The strip of land in dispute is the shaded portion of the map designated E, F, C, D. The guardian's deed covered an undivided one-half interest in this tract. Unless this strip of land lies without the boundaries of the 46.2 acre tract (hereafter referred to as the 46 acre tract) shown on the map as A, B, C, D; appellant cannot recover any portion of the leasehold for the reason that he and his wife (since deceased) had in 1930 executed and delivered to one W. H. Winn an oil and gas lease covering the 46-acre tract. Shortly after the execution of this lease it was assigned to appellee Sinclair Oil and Gas Company. Appellant and his wife purchased the 46-acre tract from T. B. Stinchcomb, October 15, 1928. The corrected oil and gas lease from appellant and wife to W. H. Winn describes the 46-acre tract as follows: "A part of the John Ruddle H. R. Survey, and located about nine miles west of Longview, Texas, and ¼ mile S. of Camp Switch, Texas, and

Beginning: 1440 vrs. South of the NWC. of said survey; Thence E 570 varas stake for corner from which a pine brs S 72½ deg. E. 38 vrs.; Thence N 460 vrs. a stake from which a hickory brs S 35 deg. E 2 vrs.; Thence W 570 vrs a stake from which a pine brs N 75 deg. E 11.8 vrs.; Thence South 70 vrs. past the NEC of a 37 acre tract made for W. L. Welborne and continuing on South to the place of beginning and containing 46.2 acres, more or less."

The trial court found upon abundant testimony that "in order to locate the 46.2 acre tract covered by the Sinclair oil and gas leasehold estate at the location claimed by plaintiff so that such tract would not include Sinclair wells No. 9, No. 15, and No. 16 (these wells are on the 10-acre tract), it would be necessary to adopt as the northwest corner of the Ruddle survey an unmarked point farther North from the Southwest corner of the Ruddle survey than the call distance of the west line of the Ruddle survey, and in this connection the trees called for at the northwest corner of the Ruddle survey have disappeared long ago, and in order to locate said 46.2 acre tract, as claimed by the plaintiff, by measuring the called distance of 1440 varas from such unmarked point for the northwest corner of the Ruddle survey it would be necessary to disregard the closer call for the northeast corner of the Welborne survey and also the location of the 46.2 acre tract as pointed out by Stinchcomb to Williams and as occupied by Williams, and the effect of such location as claimed by the plaintiff would leave only approximately 36 acres in the tract covered by the Sinclair lease instead of the 46.2 acres called for. Finally, the location of the 46.2 acre tract as claimed by the plaintiff is inconsistent with the calls in the description of the John R. Williams 16.4 acre tract described above herein, upon which John R. Williams and wife made a lease to C. D. Evans as set out above. The description of said 16.4 acre tract calls for the southwest corner of the John R. Williams 46.2 acre tract to be located at the northeast corner of the 16.4 acre tract and at the common corner of the southeast corner of the Welborne survey, the northeast corner of the McAn-

nally survey and the northwest corner of the William Anderson 50 acre tract. By locating the southwest corner of the John R. Williams 46.2 acre tract as called for in the description of said 16.4 acre tract, the 46.2 acre tract includes said Sinclair wells No. 9, No. 15 and No. 16. The 16.4 acre tract, the 46.2 acre tract, and the William Anderson 50 acre tract were tied together at a common corner, as set out in the deed from John R. Williams to his attorneys dated June 14, 1949, and being defendants' exhibit No. 305. This deed adopts the calls used by John R. Williams, et ux., locating the southwest corner of the 46.2 acre tract at the northwest corner of the William Anderson 50 acre tract and the corner of the 16.4 acre tract, making a common corner and excluding the theory that there is land between the 46.2 acre tract and the William Anderson 50 acre tract." The above and extended findings of fact by the trial court in our opinion are conclusive of the non-existence of tract E, F, C, D, as an independent tract outside of the boundaries of tract A, B, C, D. The trial court was justified in the findings above set out for the reason that point O shown on the map from which the beginning point of the 46-acre tract was to be located could not be found. Point G, Northeast corner of the Welborne survey, is shown by the record to be a well-recognized and established corner, and in the deed from Stinchcomb, under which appellant purchased, the northwest corner of the 46-acre tract was called to be 70 varas north of the Welborne northeast corner G. This then establishes with certainty appellant's northwest corner of the 46-acre tract. By reversing the calls in the deed the 46-acre tract is established as A, B, C, D, and contains the quantum of land called for, and contains all the land north of the fence along the south line of the 46-acre tract, which is the dividing line between appellant's 46-acre tract on the north and William Anderson's 50-acre tract on the south. Such construction satisfies the number of acres called for in the deed, and is consistent with appellant's testimony wherein he stated, "Yes, sir, I bought everything under the fence." " * * *

where the natural and artificial objects of the grant cannot be identified upon the ground, the proper method of locating the lines and corners will be by course and distance from the nearest recognized and established corner or artificial object with which the field-notes are connected." Kirby Lbr. Co. v. Adams, 127 Tex. 376, 93 S.W. 2d 382, 385; see also Taylor v. Higgins Oil & Fuel Co., Tex.Civ.App., 2 S.W.2d 288; Matador Land & Cattle Co., Ltd., v. Cassidy-S.W. Comm. Co., Tex.Civ.App., 207 S.W. 430; Standefer v. Vaughan, Tex. Civ.App., 219 S.W. 484; Petty v. Paggi Bros. Oil Co., Tex.Com.App., 254 S.W. 565; Bond v. Middleton, 137 Tex. 550, 155 S.W.2d 789.

To adopt the point appellant claims as the northwest corner of the Ruddle survey 1440 varas north of the beginning point and the southwest corner of the 46-acre tract, would reduce the acreage in the 46-acre tract by 10 acres, making the deed from Stinchcomb to him convey only 36 acres rather than the 46.2 acres called for, and would be over 90 varas short of the south fence pointed out to appellant by Stinchcomb as being the south boundary of the 46-acre tract. "In such state of facts quantity becomes a material circumstance." Humble Oil & Refining Co. v. Ellison, 134 Tex. 140, 132 S.W.2d 395, 399 and cases there cited. Under the evidence in this case we conclude that the trial court was fully justified in finding that the small tract E, F, C, D, is a part of the 46-acre tract conveyed to appellant by Stinchcomb and that the oil and gas lease now held by appellee Sinclair Oil & Gas Company covers and includes the small tract.

Appellant asserts under several points that the trial court erred in finding that the sale by N. E. Williams, appellant's guardian, of a part of the claimed 10-acre tract E, F, C, D, was "fairly made for an adequate price and plaintiff was not injured thereby," and that the trial court also erred in a finding that the sale and orders of the county court of Gregg County authorizing and confirming said sale are valid. It must be remembered that the guardian, as well as

the probate court, was dealing with a mere claim of appellant to a one-half interest in the 10-acre tract which was found by the court below to amount to no claim at all in so far as the oil and gas rights were concerned. Appellant's interest then, if any, was very small in the 10-acre tract and the trial court found upon abundant testimony that the price for which the guardian sold appellant's undivided one-half interest therein was fully justified both under the evidence and the laws of this state. Appellant's contention is that the property was a part of the homestead of the appellant and his minor children and that the Constitution of the state of Texas forbade the sale of same by a guardian and cites as an authority the case of Griffin v. Harris, 37 Tex. Civ.App. 586, 88 S.W. 493 (writ denied). The facts in that case showed that the sale was a forced sale of a part of the homestead to pay ordinary debts by an administrator. There can be no question about the correctness of that decision. The Constitution is plain in condemning forced sales of any part of a homestead except for payment of those debts against the homestead which are authorized by the Constitution. The sale here was not a forced sale. It was made upon application of the guardian, appellant's father, for purposes allowed by the statute and it was also a sale of an undivided interest in land. Appellant contends that the property was sold for an inadequate consideration and bases his contention on the theory that the 10-acre tract contained three producing oil wells. The facts show that there were three producing oil wells located on the shaded portion E, F, C, D, but we must not lose sight of the fact that the 10-acre tract of land was held by the trial court to be a part of the J. R. Williams 46-acre tract, and that would place the three oil wells, 9, 15 and 16, upon the 46-acre tract covered by the Sinclair lease. The price $750 for which appellant's guardian sold his claim to the 10-acre tract as shown by the facts, and found by the court, was not unconscionably low.

We have examined all other points brought forward by appellant, they are without merit and are overruled.

Judgment of the trial court is affirmed.