1018–3RD STREET et al., Appellants,

v.

STATE of Texas, Appellee.

No. 6899.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 26, 1959.

Rehearing Denied Oct. 26, 1959.

E. A. Blair and Clifford W. Brown, Lubbock, for appellants.

William J. Gillespie, Lubbock, for appellee.

CHAPMAN, Justice.

The following opinion is in lieu of our opinion announced on September 28, 1959.

This case is an appeal from a judgment of the court below permanently enjoining and abating a common nuisance and padlocking all the occupied buildings on Lots 15 and 16, Block 4, Lubbock, Texas, in a suit for the suppression of a public nuisance by means of a civil remedy exercised through

the police power of the State. The suit was brought under the provisions of Articles 666–29 and 667–27 against the premises known as 1018 3rd Street and, more particularly, described as the lots and block just named, and against the residents thereof, Juan Ysasga, his wife, Carmen Ysasga, and her parents, Ramon Hernandez and Antonia Hernandez, who were alleged to be operating a common nuisance on such premises in violation of the Texas Liquor Control Act. The jury found all parties maintained or assisted in maintaining such common nuisance.

Juan Ysasga was, without question, shown by the evidence herein to be a consistent, stubborn, flagrant violator of the liquor laws of Texas over a period of many years, and even was held in contempt in this case for a violation while the injunction was pending against him. The record shows his illegal liquor business was so flourishing that more than 30 cars an hour would come through the alley adjacent to the homes of the parties hereto for service; that Ysasga had no gainful occupation; that he kept in operation 4 to 6 automobiles and had as many as 4 people selling while he directed them when to sell and when not to sell.

The premises in question had two occupied houses enclosed by a single stone fence. Ysasga and his family lived in one of the houses before the injunction was granted and his mother-in-law and father-in-law lived in the other. Following the granting of the injunction they switched houses. At times both families had their meals in the house at 1018 3rd Street on the premises but the evidence indicates that later they ate principally where they lived. The record title to the premises was in the name of Ramon Hernandez, the father-in-law. He also held record title to two other houses in Lubbock. Carmen Ysasga, the wife, had one liquor conviction against her and Ramon Hernandez had one such conviction against him several years prior to the granting of the injunction.

The case is before us upon three points of error. The first point urges error for failure "to grant the defendant's pleas in abatement and to submit to the jury the defendant's special requested special issue as to whether or not the premises sought to be padlocked was the homestead of Ramon and Antonia Hernandez. The question as raised requires a decision by us as to whether one's homestead may be padlocked for a year under the provisions of the articles named, a question which apparently has not been decided directly by the appellate courts of Texas.

Appellants contend that the padlocking of a residence homestead was not contemplated by the legislature in passing the article above named and urges Art. 16, Sec. 50 of the Constitution of Texas, Vernon's Ann.St., as a bar thereof. Art. 666–29, Texas Penal Code provides in part as follows:

"Any room, building, boat, structure, or place of any kind where alcoholic beverages are sold, bartered, manufactured, stored, possessed or consumed in violation of this Act, or under conditions and circumstances contrary to the purposes of this Act, and all such beverages and all property kept and used in any such place, hereby are declared to be a common nuisance; and any person who maintains or assists in maintaining such common nuisance shall be guilty of a violation of this Act. * * * Upon such final judgment the court shall order that said room, house, building, structure, boat, or place of any kind shall be closed for a period of one year, or closed for a part of said time and until the owner, lessee, tenant, or occupant thereof shall give bond with sufficient surety to be approved by the court making the order in the penal sum of not less than One Thousand Dollars ($1,000), payable to the State and conditioned that alcoholic beverages will not thereafter be manufactured, bartered, possessed, stored, or sold, or otherwise disposed of therein, or kept thereon or therein, with

the intent to sell or otherwise dispose of contrary to law. * * *"

The judgment of the court provided the premises should be finally closed and padlocked for a period of one year from the date of the judgment, or until such time as the defendants entered into a proper bond in the sum of $5,000 conditioned that the provisions of the Texas Liquor Control Act will not be violated at said premises.

Article 667-27 makes it the duty of the Attorney General or the District or County Attorney to enjoin violations of the Texas Liquor Control Act and gives the District Judge the authority to grant an injunction to prevent threatened or further violations of such act.

In referring to Art. 666-29, Vernon's Annotated Penal Code and Art. 16, Sec. 50 of the Texas Constitution, the Eastland Court of Civil Appeals in Kimbrough v. State, 144 S.W.2d 401, 402, has said:

"The judgment does not set forth precisely the ground upon which the court refused to order the defendant's residence to be closed. Manifestly, the statute does not in express terms except property constituting a homestead from its provisions. The constitutional exemption of a homestead, most often the subject of litigation, relates alone to debts, and the power of sale of the owner 'if a married man.' Const. Art. 16, sec. 50, Vernon's Ann. St. If said Vernon's Ann.Penal Code, Art. 666-29, authorizes the closing of a house constituting the defendant's homestead, the legislative power to do so is referable to the police power."
* * *

"We do not find it necessary nor advisable, particularly in the absence of briefs on the question, to determine whether said statute authorizes in a civil action by the State the closing of defendant's homestead. For the purposes of this case we may assume without deciding that it does so."

The Kimbrough case then quotes the Supreme Court case of Ex parte Hughes, 133 Tex. 505, 129 S.W.2d 270, 274, as follows:

"When the State, through its proper officers, invokes the jurisdiction of a court of equity to abate a nuisance, it must be shown either that the action is directly authorized by some constitutional or statutory law, or that such nuisance is an injury to the property or civil rights of the public at large, * * *."

The Eastland court then affirmed the action of the lower court in refusing to padlock the residence homestead "under the circumstances herein adduced" by observing that the wife who had a direct interest in the homestead necessarily to be affected by an order closing it was not made a party to the suit. The court then refused to pass directly on the question of the right to padlock a residence homestead under the circumstances where the wife had not been made a party.

■ The interpretative comments under Art. 16, Sec. 50 of Vernon's Texas Constitution gives us some history of the adoption of the homestead exemption in Texas by saying in effect that it is a Texas creation. It evolved as a result of the social attitude toward debtors whereby the person, then the personal property, and finally the real estate were freed from control of the creditor through the abolition of imprisonment for debt, the extension of chattel exemptions and the adoption of the homestead exemption, with limitations. Such comments suggest that the direct cause of the law was the U. S. Panic of 1837 and the loss of numerous homestead farms by Texas families during the ensuing depression and had a threefold purpose:

"(1) To preserve the integrity of the family as a basic element of social organization * * *;

"(2) To provide the debtor a home for his family and some means to sup-

port them and to recoup his economic losses so as to prevent the family from becoming a burden upon the public;

"(3) To retain in pioneers the feeling of freedom and sense of independence which was determined necessary to the continued existence of democratic institutions."

Neither in this history, nor in any reliable Texas case book authority, do we find even a suggestion that our forebearers conceived of a homestead exemption for the purpose of erecting a barrier behind which criminals might ply their trades while thumbing their noses at law enforcement officers diligently and sincerely seeking to enforce prohibitions residents of the area had expressed a desire for at the ballot box.

■ Therefore, since it seems apparent that our statutes which make provisions for the action taken herein do not except homesteads and the constitution of Texas does not prohibit such statutory authority we see no good reason why a homestead should protect persons in such operations as the evidence shows were being conducted in this case. The object of Art. 666–29 would be defeated if its provisions do not apply against homesteads. The purpose of the statute is a broad one, and it should be given a construction which is consonant with that purpose. Therefore, appellants' point one is overruled.

■ The second point asserts error of the trial court for failure to submit to the jury whether appellants intended to violate any of the Texas liquor laws in the future.

Though Juan Ysasga was placed on the witness stand he never at any time in any of his testimony asserted he did not intend to violate the liquor laws in the future. Thus, he did not raise any question to present to the jury on his future intentions. The record is without contradiction that Juan Ysasga had the free run of the entire premises and that he operated out of both houses at different times. Indeed, the appel-

lants by brief admit the State proved numerous sales at 1018 3rd Street and in the driveway thereof, in the alley behind said premises, and next door at the other house on the premises. Additionally, we believe the evidence is conclusive that all four defendants had knowledge of the fact that the liquor laws were being violated on the premises. Even if it should be said the contrary was true, under the record of this case, it would not preclude the action of the trial court in refusing the issues complained about.

The Dallas Court of Civil Appeals in an injunction and padlocking case under the same article as the one here under consideration said of the owners Dodd and wife:

"If, in fact, Dodd and wife were innocent of all violations of the law, and had no knowledge of the acts of their codefendants causing their property to be condemned as a nuisance, they cannot complain of the closing and padlocking of the building for unlawful acts of others." Dodd v. State, Tex. Civ.App., 193 S.W.2d 569, 572.

Since the record here reveals that Juan Ysasga used the entire premises in his illegal liquor law violations and that he did not tender any proof that he did not intend to violate the liquor laws in the future, we believe appellants' point two is without merit. Vance v. State, Tex.Civ.App., 179 S.W.2d 436.

Appellants' last point of error complains of the method of submission of the issues inquiring if the parties named maintained or assisted in maintaining a common nuisance.

■ The first issue inquired if the manner of operating and maintaining the premises was a nuisance, "as defined herein." The charge gave the statutory definition of common nuisance as applied to liquor violations. Each issue complained about was conditioned upon the jury's having first answered "yes" to Special Issue No. 1 and

that only in such event would they answer Issues 2, 3, 4 and 5. The principal contention is that the use of the term "such common nuisance" constituted a comment upon the weight of the evidence by telling the jury the court believed a common nuisance was being maintained. The word "such" refers back to the nuisance inquired about in the first issue and the court had asked the jury if the manner of operating and maintaining the premises was a nuisance as defined. The definition was of a common nuisance. The issues would have been in better form had they been phrased to ask "if the defendant maintained or assisted in maintaining a nuisance, (or common nuisance) if any, or, if any you have found," but we do not believe the manner of submission was such as to justify our sending the case back for another trial.

Rule 434, Vernon's Ann. Texas Rules provides that "No judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case  *  *  *"

■■■ This rule enlarged the doctrine of harmless error so as to cast upon the complaining party the burden of showing at least that error probably resulted to his prejudice. Texas Power and Light Co. v. Hering, Tex., 224 S.W.2d 191. In determining if the complaining party has been harmed by the error complained about the appellate court will consider the question from the record as a whole. Texas Power and Light Co. v. Hering, supra. We have carefully studied this record as a whole and are of the opinion that even if it should be said the method of submission of the issues complained about constituted error such error did not amount to such a denial of the rights of the appellants as was

reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. The judgment of the court below is in all things affirmed.