Rebecca MALLOU, Appellant

v.

PAYNE & VENDIG, Appellee.

Nos. 05–87–00246–CV, 05–87–00691–CV.

Court of Appeals of Texas,
Dallas.

March 30, 1988.
Concurring Opinion May 3, 1988.
Rehearing Denied May 19, 1988.

James B. Martin, Dallas, for appellant.
Ronald Z. Aland, Dallas, for appellee.
Helen Hampton, intervenor pro se.

Before DEVANY, LAGARDE and
THOMAS, JJ.

DEVANY, Justice.

In these two consolidated cases, appellant, Rebecca Mallou, appeals from a divorce decree which, inter alia, ordered a receiver to be appointed over the family homestead, and ordered the receiver to sell the family homestead and to pay Mrs. Mallou's unsecured creditors out of a portion of the proceeds. In eleven points of error, which are summarized, appellant complains that the trial court erred in: (1) appointing a receiver to sell the parties' homestead; (2) allowing the law firm of Payne and Vendig, which had represented Mrs. Mallou, to intervene a second time in the divorce proceedings; (3) failing to grant Mr. and Mrs. Mallou's joint motion for new trial and to discharge the receiver, (4) failing to properly determine what portion of Mrs. Mallou's family home was not exempt from the claims of creditors; (5) not allowing a trial by jury; (6) approving a contract of sale that provided for a $200.00–a–day penalty for every day that Mrs. Mallou stays in the home after the date of the closing; and (7) allowing the receiver to appear by and through the same attorney who was representing the judgment creditor.

We agree that the trial court erred in: (1) failing to grant Mr. and Mrs. Mallou's joint motion for new trial and to discharge the receiver; (2) failing to properly determine what portion of the homestead was exempt from the claims of creditors; (3) approving a contract of sale that provided for a $200.00–per–day holdover penalty; (4) allowing Payne and Vendig to intervene for a second time in the divorce suit; and (5) allowing the receiver to appear by and through the law firm of Payne and Vendig. Because the trial court committed these errors, we modify the judgments. As modified, the judgments are affirmed.

THE FACTS

The facts involved in these two cases are complex and convoluted, therefore, we shall set forth only the salient details. On August 5, 1985, Fernando Mallou filed for divorce against Rebecca Mallou in the 303rd District Court. On August 30, 1985, Rebecca Mallou, represented by the law firm of Payne and Vendig, filed a cross action for divorce. On September 9, 1985, the court entered various temporary orders. From June 2 to June 5, 1986, a trial was conducted on this action. On September 5, 1986, Payne and Vendig were allowed to withdraw as Mrs. Mallou's counsel because she allegedly owed the law firm $23,375.30 in attorneys' fees accrued during the divorce case. Then, on September 9, 1986, Payne and Vendig asked to intervene in the Mallou divorce suit as unsecured creditors. The trial court allowed Payne and Vendig to intervene. On September 19, 1986, the trial court entered an order appointing one Helen Hampton as a receiver over the family homestead. The Mallou homestead consisted of 1.84 acres of land and the house thereon.

From the decree of divorce on November 21, 1986, and the briefs, we understand that this property had an appraised value of $1,100,000. On November 21, 1986, the trial court entered a decree of divorce ordering the receiver to sell the 1.84 acres for $1,100,000 *and then* awarded the family homestead to Mrs. Mallou. In the same instrument, the court gave 99.93% of the proceeds from the sale of the property to Mrs. Mallou and gave to Mr. Mallou an interest of .067% in the proceeds from the sale of the property. This small interest to Mr. Mallou is estimated at $737 based on the foregoing appraisal, we are advised by the briefs. We are further advised by the briefs that Mrs. Mallou's interest in the proceeds from the sale would then be worth $1,099,230.00. We note that the trial court left a minor fraction of the proceeds, .003% or $33.00 worth, unaccounted for in the decree.[1] This November 21st decree further ordered Mr. Mallou to deed over his interest in the home to Mrs. Mallou. The decree further ordered the receiver to sell the property and to distribute the proceeds in accordance with further orders

---

1. When Mr. Mallou subsequently deeded all of his interest to Mrs. Mallou, the problem of the unaccounted for percentage was solved.

of the court. The trial court then entered a judgment in favor of Payne and Vendig against Mrs. Mallou for $23,375.50 plus prejudgment and post-judgment interest and $750 in additional attorneys' fees. The trial court then severed Payne and Vendig's action against Mrs. Mallou and entered a final judgment against Mrs. Mallou.[2]

Mrs. Mallou then purchased Mr. Mallou's nominal interest. As a result, Mr. Mallou and Mrs. Mallou filed a joint motion on December 18, 1986, to modify the judgment and for new trial in which they asked that the receivership be terminated and that the home not be sold since Mr. Mallou had been paid for his small interest, and both parties agreed that Mrs. Mallou should keep the home. Before this motion was ruled upon, on January 14, 1987, Payne and Vendig filed a *second* petition to intervene in the divorce action between Mr. and Mrs. Mallou and opposed both the joint motion for termination of the receiver and the joint motion for new trial. The trial court allowed Payne and Vendig to intervene a second time. On January 20, 1987, the trial court overruled the joint motion of Mr. and Mrs. Mallou.

On January 28, 1987, the trial court entered an order approving the proposed sale of the property by the receiver. On January 29, 1987, Mrs. Mallou filed a lis pendens in the Dallas County deed records. Payne and Vendig then pled in its second intervention suit against Mrs. Mallou that the court should appoint a receiver to sell Mrs. Mallou's home and to pay off its judgment for legal fees with the proceeds of the sale. Although, as noted above, the trial court had already entered an order appointing a receiver to sell the home, as a result of this second intervention by Payne and Vendig, the trial court on March 31, 1987, entered yet another order which *again* appointed one Helen Hampton as

receiver over the property. The court ordered that a $1,000 bond be posted in case the receiver was wrongfully appointed.[3]

On April 2, 1987, the receiver, Helen Hampton, applied for approval of a sales contract which she had entered into to sell the 1.84 acres of property. With some minor date changes, this contract is identical to the proposed contract the trial court approved on January 28, 1987. On April 6, 1987, Payne and Vendig moved to have Mrs. Mallou's lis pendens expunged from the deed records. On April 13, 1987, the trial court ordered the lis pendens expunged and approved the sale of the property. On April 14, 1987, the receiver filed a report stating that the entire 1.84 acres with the house, all of which had been appraised at $1,100,000, had been sold for $675,000 and that the proceeds were in the possession of Hexter–Fair Title Company as the escrow agent. The trial court subsequently declared that $366,897.83 of these funds were exempt under the homestead law and that the remainder, $308,102.17, were not exempt. The trial court reasoned that since section 41.001 of the Texas Property Code states that the exempt portion of an urban homestead cannot exceed one acre of land, and since Mrs. Mallou's property consisted of 1.84 acres of land, then the $675,000 paid for 1.84 acres of land should result in a proration of $366,897.83 for one acre. It was in this manner that the trial court found that $366,897.83 was exempt property and $308,102.17 was available to the court to distribute for creditors, real estate commissions, and other expenses connected with the sale.

From the $308,102.17, the trial court ordered the following items paid:

1) The Payne and Vendig judgment for attorneys fees in the amount of $25,-174.10 plus $6.60 a day for interest from April 13, 1987, until paid.

---

2. The Mallou divorce action was docketed as 85–11602–V at trial and is 87–00246–CV in this court. Payne and Vendig's action for attorneys fees against Mrs. Mallou was redocketed as 86–17129–V at trial and is 87–00691–CV in this court. Because these cases are so interrelated, for judicial economy we have consolidated them on appeal.

3. We note the inadequacy of this bond to protect Mrs. Mallou's rights since the property in question has been represented to be worth $1,100,000.00.

2) A second judgment rendered in favor of Payne and Vendig against Mrs. Mallou for $2,085.60 plus $.37 a day interest from April 13, 1987, until paid.

3) $200 a day holdover rent from April 26, 1987 until Mrs. Mallou leaves the property.

4) A real estate commission for the receiver, Helen Hampton, in the amount of $40,500 for selling the property.

5) $4,622 in additional expenses for taxes and assorted other miscellaneous expenses in connection with the sale.

On April 21, 1987, the trial court discharged the receiver. On April 24, 1987, Hexter–Fair filed a plea in intervention asking for a declaratory judgment that it would not be liable to any party if it dispersed the funds in accordance with the court's order. This action was obviously precipitated by the attorney for Mrs. Mallou who sent a letter to the in-house counsel for Hexter–Fair warning him that the appointment of a receiver was being challenged in the divorce suit on appeal and of the legal hazards surrounding the dispersement of the proceeds under the circumstances. On May 8, 1987, the trial court issued an order granting Hexter–Fair's plea in intervention and further ordered Mrs. Mallou to pay attorneys' fees to Hexter–Fair in the amount of $1,000 and to Payne and Vendig in the additional amount of $1,312.50.

This order again reiterated prior orders as to how the funds from the sale of the property were to be distributed. On May 18, 1987, Mrs. Mallou moved the trial court to permit her to pay Payne and Vendig $27,000 in attorney's fees in exchange for being allowed to keep her home. Payne and Vendig opposed this motion claiming that this amount failed to include $1,657.56 in interest that had recently accrued on the judgment. Payne and Vendig further opposed the motion on the grounds that to restore the property to Mrs. Mallou would be unjust to the new buyer of the home. The trial court refused to entertain Mrs. Mallou's motion. This appeal followed.

## A DISCUSSION OF THE LAW

The trial court may divide property upon a divorce in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex.1981); TEX.FAM.CODE ANN. 3.63 (Vernon Supp.1987). The trial court has wide discretion in ordering a division of property and the trial court's orders will not be disturbed on appeal unless a clear abuse of discretion is shown. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987); *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex.1974); *Simpson v. Simpson*, 727 S.W.2d 662, 664 (Tex.App.—Dallas, 1987, no writ). With these principles in mind, we turn to the propriety of the trial court's appointment of a receiver over the property, the refusal of the trial court to grant the parties' *joint motion* for termination of the receivership, and the trial court's order to sell the 1.84 acres and use the proceeds to pay for expenses of the sale itself and third parties claiming against Mrs. Mallou.

Under Section 3.58(h)(3) of the Family Code, the trial court may appoint a receiver for the preservation and protection of the property of the parties. "Parties" in the context of section 3.58 *means the spouses. Commonwealth Mortgage Corporation v. Wadkins*, 709 S.W.2d 679, 680 (Tex.App.—Houston [14th Dist.] 1985, no writ); *Mussina v. Morton*, 657 S.W.2d 871, 874 (Tex.App.—Houston [1st Dist.] 1983, no writ). "Parties" does not include third-party creditors, such as Payne and Vendig. The family courts do not have unbridled discretion in appointing a receiver. *Reidhimer v. Reidhimer*, 728 S.W.2d 872, 873 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Northside Bank v. Wachendorfer*, 585 S.W.2d 789, 790–92 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). As this court has stated previously: "In recognition of the fact that appointment of a receiver without notice is one of the most drastic actions known to law or equity and should be exercised with extreme caution and only where great emergency or imperative necessity requires it, our courts have uniformly been reluctant to grant such

harsh relief." *Best Investment Co. v. Whirley*, 536 S.W.2d 578, 581 (Tex.Civ.App.—Dallas 1976, no writ). The appointment of a receiver is disfavored in the law and is only permitted if it is conclusively shown that: (1) the property is in danger of being lost, removed, or materially injured; (2) the trial court considered other available options; and (3) from the evidence before it, the trial court concluded that a less harsh remedy was unavailable. *Reidhimer*, 728 S.W.2d at 873; *Parness v. Parness*, 560 S.W.2d 181, 182 (Tex.Civ.App.—Dallas 1977, no writ).

■ In the instant case, the trial court refused to terminate the receivership and ordered the family homestead sold even though Mrs. Mallou was given a 99.63% interest in the property and Mr. Mallou only a .067% interest in the property. It is obvious that Mrs. Mallou's interest in the property was not preserved or protected by the forced sale of her home. Likewise, since Mr. Mallou's interest in the property was so negligible, it could be easily preserved by Mrs. Mallou buying his interest for $737 from the more than ample remaining marital estate. The briefs tell us that over $100,000 in cash was awarded to Mrs. Mallou. We conclude that there was no necessity to continue the receivership. Since Mr. and Mrs. Mallou are the only parties whom the trial court has the power to protect through the powers granted to the court under section 3.58 of the Family Code, we hold that once Mr. and Mrs. Mallou made a joint motion for termination of the receivership the trial court abused its discretion *as a matter of law* in refusing to grant the motion. At the time the motion to terminate was filed, Mrs. Mallou was the only party with an interest in the property. She alone could have prevailed in requesting that the receivership be terminated.

■ We now turn to the trial court's orders appointing Helen Hampton as receiver, ordering the property sold, and *further ordering* that the proceeds of the sale be used *first* to pay off Mrs. Mallou's unsecured creditors. It is significant that the property in question has been the Mallou homestead since 1973.

The Texas Constitution provides:

The homestead of a family or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of both spouses in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead; .... All pretended sales of the homestead involving any condition of defeasance shall be void.

TEX.CONST. art. XVI, § 50.

There is no older nor more well established law in Texas jurisprudence than the constitutional protection from forced sale of a homestead. *See Curtis Sharp Custom Homes, Inc. v. Glover*, 701 S.W.2d 24 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (en banc) for a complete discussion of this law, and the interpretive comments under Art. 16, Sec. 50 of the constitution. *See also 1018–3rd Street v. State*, 331 S.W.2d 450, 453–454 (Tex.Civ.App.—Amarillo 1959, no writ).

Assuming, arguendo, that it was necessary to sell the homestead in this case, it has been held that *before* a forced sale is made of the homestead, the exempt portion must be ascertained and, if possible, the excess segregated from the homestead. *Clement v. First National Bank of Paris*, 259 S.W. 561, 562 (Tex.Comm.App.1924); *Harrison v. First National Bank of Lewisville*, 238 S.W. 209, 212 (Tex.Comm.App. 1922). To allow otherwise would result in an injustice and a sacrifice of *both the homestead and the excess*. *Id.* If the property is not susceptible of partition, in order that the homestead may be segregated from the excess and only the excess sold, it should at least be determined what percentage of the value of the whole property is subject to sale, and only this definite

interest be offered for sale. *Id.* This procedure was not followed in this case. The trial court ordered the home sold *before* it determined whether there was an excess.[4] It was after the sale, and the proceeds of the sale were in the hands of the escrow agent, that the trial court *then* concluded that $308,102.17 of the proceeds were non-exempt. It reached this conclusion by taking the sales price of $675,000 and dividing it by 1.84 acres. This resulted in a value of $366,897.83 per acre. Consequently, the trial court concluded that the remaining proceeds were non-exempt and subject to the claims of third parties. Therefore, even if the trial court had not abused its discretion in this case, it did not use a correct formula in determining what was non-exempt. It was obviously improper to conclude that all 1.84 acres would have sold for the same amount per square foot. No consideration was given to the house on the land. Had Mrs. Mallou been allowed to designate and segregate the one acre that she wanted to claim as her exempt property, she no doubt would have chosen the acre that included her house. The remaining .84 of an acre of unimproved property would, of course, have a value of considerably less than the acre with the improvements on it. In summation, to use the power of the court to sell property which contains a homestead without first determining what part is homestead, or for the purpose of paying claims of third parties, circumvents the Texas Constitution. We hold such action to be a clear abuse of discretion *as a matter of law.*

As stated above, the trial court's actions in this case contravened article XVI, Section 50, of the Texas Constitution. The court in *Griffin v. Harris,* 39 Tex.Civ.App. 586, 88 S.W. 493, 495 (1905, writ denied), stated the fundamental principle that:

> The constitution of the state (article 16, § 50) protects the homestead from forced sale for the payment of all debts. Under this prohibition of the Constitution, the county court is deprived of the jurisdiction or power to order a sale of the homestead to pay the ordinary debts of the estate. *Yarboro v. Brewster,* 38 Tex. 418; *Hamblin v. Warnecke,* 31 Tex. 91; *McCloy & Trotter v. Arnett,* 47 Ark. 445, 2 S.W. 71. The county court not having the power to order the sale, no title passed to the purchaser at a sale made in pursuance of such order. The order was a nullity, and it is immaterial whether the purchaser had knowledge of the fact that the property was the homestead or not. Having purchased under a void order, he took no title. *Withers v. Patterson,* 27 Tex. 500, 501, 86 Am.Dec. 643.

This language in *Griffin* was cited with approval by our Supreme Court in *Cline v. Niblo,* 117 Tex. 474, 8 S.W.2d 633, 637 (1928). The court in *Cline* also cited their opinion in *Yarboro v. Brewster,* 38 Tex. 398, 407–11 (1873), where the court held:

> But it is contended that the sale by the administrator, under the order of the probate court, is conclusive against the appellees, and that this proceeding cannot be collaterally impeached. There can be no doubt that the probate court has jurisdiction to determine what is the homestead left by a deceased person to his or her family. *But there can be just as little doubt that neither the probate court nor other court in the state of Texas has jurisdiction to order the sale of a homestead,* to pay debts, where there is a family left who have right to occupy it; and it is totally unnecessary to quote the authorities so often referred to by this court to support this doctrine. In this case there should have been no difficulty, there was no other real estate left by James Grimes at his death. An inventory was returned by the administrator which must have shown this fact. The rights of the minor heirs were totally disregarded, they were parties to no proceeding against them. No allowance was made in lieu of homestead, and their rights cannot be cut off by such an illegal proceeding. No equities attach to

---

4. Because of our disposition of this case, we need not consider Mrs. Mallou's assertion that a retroactive application of section 41.002(c) of the Property Code would be unconstitutional as applied to her.

purchasers against them, for the probate court had no jurisdiction to order the sale. The judgment of the district court is therefore affirmed.

The *Griffin* and *Cline* opinions have been cited with approval numerous times, *e.g.,* *Butler v. Summers,* 151 Tex. 618, 253 S.W.2d 418, 421 (1952); *Williams v. Sinclair Prairie Oil Co.,* 247 S.W.2d 422, 426 (Tex.Civ.App.—Texarkana 1952, no writ); *Aman v. Cox,* 164 S.W.2d 744, 748 (Tex. Civ.App.—Eastland 1942, no writ); *Newman v. City of El Paso,* 77 S.W.2d 721, 725 (Tex.Civ.App.—El Paso 1934, writ dism'd).

It is an elementary principle of law that a domestic relations court cannot order the homestead sold and the proceeds paid to unsecured creditors; *e.g., Brock v. Brock,* 586 S.W.2d 927, 930 (Tex.Civ.App.—El Paso 1979, no writ); *Klein v. Klein,* 370 S.W.2d 769, 774 (Tex.Civ.App.—Eastland 1963, no writ). Indeed, as the *Griffin* and *Cline* line of cases teach us, (1) the trial court is without jurisdiction to order a homestead sold to pay ordinary debts; (2) any such order is a nullity; (3) no title would pass to a "purchaser" at such a sale whether the "purchaser" knew the property was a homestead or not; and (4) any such order or sale can be attacked either directly or collaterally. It naturally follows that any attempt by the trial court to accomplish what it is without jurisdiction to do, and what the constitution specifically prohibits it from doing, constitutes *a clear abuse of discretion as a matter of law.*

We emphasize that our holding should not be construed as questioning the power of the Family Courts, under section 3.63 of the Family Code, to order a homestead sold over the objection of the parties. Unquestionably, the Family Courts have both the right and power to order a homestead sold and the proceeds distributed to the parties, if the court decides that best accomplishes a "just and right" property division between the parties to the divorce. There are two instances when a forced sale of a homestead is proper. The first is when it is done within the perimeters of article 16, section 50 of the Texas Constitution. The second is when it is done pursuant to section 3.63 of the Family Code for the purposes allowed therein. In the case at bar, the forced sale was ordered pursuant to *neither* of these provisions. Consequently, the Family Court in this case was without authority to order such a sale.

The appellee points out that this case is before us with no statement of facts, findings of fact, or conclusions of law. We are mindful that generally in the absence of a statement of facts or findings of fact we presume that the trial court had before it and passed upon all the facts necessary to authorize it to render the judgment. *See Zac Smith and Co., Inc. v. Otis Elevator Co.,* 734 S.W.2d 662, 666 (Tex.1987); *Murray v. Devco, Ltd.* 731 S.W.2d 555, 557 (Tex.1987). Nevertheless, this general rule is not applicable where the judgment shows upon its face that it is not authorized. *Taylor v. Catalon,* 140 Tex. 38, 43, 166 S.W.2d 102, 105 (1942). *See Curtis Sharp Custom Homes, Inc. v. Glover,* 701 at 27. Furthermore, such presumptions will only be indulged in when they are consistent with the record and the record fails to show error. *Consolidated Underwriters v. McCauley,* 320 S.W.2d 60, 64 (Tex.Civ. App.—Beaumont 1959, writ ref'd n.r.e.) cert. denied 361 U.S. 14, 80 S.Ct. 109, 4 L.Ed.2d 52 (1959). *See also Harris v. Lebow,* 363 S.W.2d 184, 185–86 (Tex.Civ.App. —Dallas 1962, writ ref'd n.r.e.). In this case this presumption is overwhelmingly rebutted by the record before us. The errors are apparent from the face of the record and we cannot ignore them.

██ We now turn to other errors committed in this case. First, the trial court erred in severing Payne and Vendig's claim for attorneys' fees from the divorce suit. *See Inman v. O'Donnell,* 722 S.W.2d 16, 17–18 (Tex.App.—Dallas 1986, original proceeding). Second, the trial court erred in allowing Payne and Vendig to intervene for a second time to oppose the Mallou joint motion to dissolve the receivership. Since Payne and Vendig sought to intervene more than thirty days following the entry of its order of severance, the trial court lost the power to add new parties to the litigation. *See Comal County Rural High School District No. 705 v. Nelson,* 158 Tex. 564, 314 S.W.2d 956, 956–57 (1958). Fur-

thermore, once Payne and Vendig received its final judgment against Mrs. Mallou, it no longer had any justiciable interest in the Mallou divorce suit. Since Payne and Vendig had no interest in the subject matter before the court, intervention should not have been permitted. *See King v. Olds*, 71 Tex. 729, 730–32, 12 S.W. 65, 65–66 (1888); *Rogers v. Searle*, 533 S.W.2d 440, 442 (Tex. Civ.App.—Corpus Christi 1976, no writ). Third, the trial court erred in allowing the law firm of Ungerman, Hill, Angrist and Dolginoff to represent both Payne and Vendig and the receiver, Helen Hampton. We further note that it was the husband of the attorney who worked for Mrs. Mallou that represented both his wife's law firm, as an unsecured creditor, and the receiver. The receiver has a duty to all of the litigants in a divorce action and must act with the utmost impartiality. It is clear that when the receiver is being advised by the same attorney who represents a creditor of one of the parties in the divorce suit that the receiver's ability to act with the utmost impartiality is compromised. Rule 5–105(B) of the Code of Professional Responsibility prohibits an attorney from representing more than one party in a case if the exercise of his or her independent judgment on behalf of an existing client may be adversely affected by the representation of another client. That possibility certainly existed in this case and Ungerman, Hill, Angrist, and Dolginoff should not have been allowed to represent both Payne and Vendig and Helen Hampton.

For the reasons stated, we hold that the receivership should have been terminated and that any and all orders of sale of the home are void. We further hold the sale of the home by the receiver is void. As modified, the judgments of the trial court are affirmed.

THOMAS, J., concurs with result only.

THOMAS, Justice, concurring.

I concur in the result only.